**Law Offices of**
**John E. Tiffany P.C**.
55 Washington Street, P.O. Box 190
Bloomfield, NJ 07003
Tel: (973) 566-9300
Fax: (973) 566-0007

9 February 2006

Honorable Emmet G. Sullivan, US District Judge         VIA FAX: 202-354-3265
US District Court for the District of Columbia
333 Constitution Ave., NW
Washington, DC 20001

Subject:    Court's Order of January 19, 2006
Reference:  *Idema, et al, v. Rice, et al*, Case # CIV-05-2064 (EGS), *Habeas Corpus*

Dear Judge Sullivan,

  My client, Jack Idema, has requested I file a motion with the court for reconsideration of the Court's Order of January 19, 2006.  In lieu of that, I am filing this letter with the Court to address his concerns.  I have received prior permission from the Court to send this letter via facsimile.   It is also my understanding that the Petitioners, as a group, would like to file additional *pro se* motions through a *next friend*, and an appeal, as soon as they can determine a way around the US Embassy mail embargo.

  Mr. Idema has directed me not to file an Amended Petition.  Basically he has fired me absent my agreement to not file any Amended Petition at this time.  Rather than discuss my position, points and authorities with the Court, I have been requested by Mr. Idema to place his concerns on the record as close to verbatim as possible.  Therefore, I have made extensive use of quoted statements, and the footnoted cases and rules Mr. Idema has referenced.  Mr. Idema's positions are as follows:

1.   He will not file an Amended Brief to be filed solely on his behalf.  He has refused to allow me to do this on his behalf.  He has stated, verbatim:

   "We have fought, bled, and come close to dying many times together through this ordeal.  Three different religions, and two different nations, standing side-by-side.  We have watched our friends and brothers die next to us, and be murdered and executed by *al-Qaida* terrorists in front of us.  We will not be split apart, nor separated, by any force, including God."[1]

2.   He has refused to allow an Amended Brief to be filed.  His position is that the first petition was filed at great expense to all petitioners,[2]

---

[1] Captain Bennett and Lieutenant Banderas have confirmed this position by phone.
[2] Even though I am acting in a *pro bono* capacity, the filing of that brief bore an extraordinary cost in both courier service, and phone calls from Afghanistan which Mr. Idema paid for.  It far

3. The *habeas corpus* petition was detailed and cannot be dismissed for failure to state a claim, nor can the government request a more definitive statement. Therefore, Mr. Idema's position is that the law provides that the Court must, absent a response by the government in almost one year, accept all of the facts pled, and verified, as fact, and are deemed admitted by the government. I do agree that if he were to file an Amended Petition, the government, would have in essence, been granted a one year extension to answer a brief that should have been answered with 30 days of service.

4. Mr. Idema's further position on this point is that:

   "It is a fundamental fact of *habeas corpus* law that a verified *habeas corpus* petition is considered factual on its face absent a sworn affidavit or verified answer by the respondent. We verified it, they didn't answer it, and so the only thing we are asking the Court to decide is the law; it is our position that the factual issues are now admitted absent any opposition."

5. The petition was filed in March 2005. Mr. Idema's position is that the first rule of the Federal Rules states "to secure the just, speedy, and inexpensive determination of every action." He feels that he has, and is, being denied *due process*.

6. Additionally, relating to the filing of Amended Petition and a stay for the government, Mr. Idema has stated that:

   "This case was delayed, and lost, and delayed again for more than nine months before we were even told where the file was. The federal rules call for a conference within 90 days of defendants' appearance, and the defendants appeared in April 2005.[3] Therefore, I will not be forced to now endorse those delays and what I consider government obstruction, by filing an Amended Petition," when instead, he asserts, "that the government should be sanctioned, not us."[4]

7. I explained to Mr. Idema that the Court did everything possible to accommodate them, and that we were all dealing with technical problems, a new courtroom, and various other problems. While I personally and professionally appreciate the technical difficulties of having a petitioner appear at a *habeas corpus* hearing by phone, and the highly unusual nature of that appearance, Mr. Idema and his fellow petitioners have

---

exceeded $5,000 in phone calls as a result of the US Embassy's mail ban. Mr. Idema is prepared to show physical evidence of this. I can confirm that the Embassy's communication ban has cost Mr. Idema, their families, and myself, more than $20,000 in phone calls and satellite calls.
[3] *See*: Rule 16(b) (referencing Rule 26(f)) The [Scheduling] order shall issue as soon as practicable but in any event within 90 days after the appearance of a defendant. . ."
[4] The added delays and expense to file a new petition are considered by Mr. Idema to be what is in effect, a sanction, by putting the burden upon him to correct error caused by the Respondents.

stated that they had a "perfect" connection with an officer of the Court after borrowing another phone from a Northern Alliance general, and were told the Court was finished with them and did not want to hear from them. I can only accept the word of all three of them that this happened.

Unfortunately, Mr. Idema feels that after one year of waiting for a hearing, *due process* was again denied to him, and especially to his fellow petitioners, when they were not allowed to put their statements on the record and oppose the Court's decision.

8. On staying the Respondent's response, Mr. Idema's position is that:

"The stay of the Respondents' answer is inappropriate because it gives the government a 'third bite of the apple,' because when a respondent fails to file a verified opposition and fails to answer, all facts are deemed admitted."

9. Mr. Idema has also requested that I notify the Court that since the hearing, the US State Department has further retaliated against these Petitioners. On behalf of himself, Captain Bennett, and Lieutenant Banderas, he has stated that:

"21 packages were returned from the Afghan post office at the direction of the State Department, to the United States. These returns were solely for retaliation purposes and contained food, medicine, and relief parcels, thereby violating a long list of international laws. Before they were returned, we know for a fact, and have physical evidence to prove it, that the State Department picked up at least seven packages, searched them, copied documents, seized video and audio evidence being sent to us, and then sent the rifled packages back to their senders in the United States at taxpayer expense. These acts were solely for arbitrary, capricious, and nefarious retaliatory purposes."

Mr. Idema has also informed me that he has been informed that at least seven more food and humanitarian relief parcels sent by family and friends are being held at the US Embassy since the illegal seizure of these packages prior to Christmas.

10. Mr. Idema's position on the arbitrary and capricious retaliation by the US State Department which cut off all water and medicine as soon as this Court set a hearing date, is as follows:

"For more than one month now, the State Department has tried to break us and punish us by not only continuing their mail ban, but by cutting off our water, medicine, and food. They stated they had no intention of allowing us water, medicine, food parcels, or contact until after the date of the Court's Order for an amended petition expired. When we barricaded ourselves in, announced a hunger strike, and called a press conference, the State Department finally capitulated, after also being threatened by Afghan Generals, and delivered

enough water for twenty days, but nothing else except the Court's Order, which had been opened, read, copied, and repackaged.  Nor did they allow us to send our signed pleadings and affidavits to the Court."

"Furthermore, we have attempted to send letters to the Court through Red Cross at least five times and all were denied at the direction of the US Embassy.  On one occasion, myself, Bennett, and Banderas, were able to send a letter to Judge Sullivan through a sympathetic Swiss Red Cross nurse who was visiting the United States.  We were clearly told that the US government had put 'pressure' on everyone to make sure no mail or letters left Afghanistan on our behalf."

Mr. Idema, on behalf of himself, and acting as next friend to Bennett and Banderas, has also voiced specific objections to the Court's Order.  For ethical reasons, I am also putting those objections in quotes to reflect his exact statements which he requests be placed in the record:

a.  Regarding Lt. Banderas, the Afghan co-Petitioner and Afghan CIA officer:

"I take great exception to Lieutenant Banderas being left out of the Order.  This man defended America during the war.  He fought al-Qaida, and the Taliban.  He lost his father during the war against the Soviets.  His brother worked for American Special Forces and lost his life in Mazar-i-Sharif.  Banderas fought with British, French, and American Special Forces to keep Americans safe at work and at home; safe from suicide bombers and suicide planes.  Yet his claims are not even given cursory consideration by the Court.  I find this personally deplorable."

b.  Regarding my conversations with Mr. Idema off the record during the hearing, Mr. Idema has taken exception to that, stating:

"The conversation between myself and Mr. Tiffany, outlined in the Court's Order is incorrect in that the Order states: 'Bennett and Idema were able to speak with Mr. Tiffany off the record.'  But, the fact is that all three of us spoke on the record and entered our appearance.  We also spoke with Mr. Tiffany, and Captain Bennett and Lieutenant Banderas both told Mr. Tiffany they wanted attorneys appointed, and both had previously filed formal written motions in the New York district court requesting counsel.  But those motions appear to have also been conveniently lost.  Mr. Caraballo also filed a motion to appoint counsel, also apparently lost."

c.  Regarding additional time being given to the government to answer FOIA requests:

"The Court Order states that Mr. Tiffany, on my behalf, requested additional time for the government to provide FOIA requests 'to try and settle some, if

4

not all, of the FOIA claims.' I will not agree to that because it is clear that the government is acting in bad faith, and I would prefer to fire my *pro bono* attorney and appear *pro se* than agree to those terms. The government has had 18 months to answer FOIAs, and yet not one piece of paper has ever been released.[5]  Any observer can see that the government is trying to cover-up, obstruct justice, and conceal evidence."

d. Related to an actual consolidation of the FOIA and *habeas corpus* cases:

"It is our position, that it is improper, and in violation of the rules, to consolidate two completely separate cases with separate plaintiffs, defendants, Petitioners, and Respondents. This acts as a great disservice to importance of *habeas corpus* actions. It allows the government to intermix both, in order to deemphasize the importance of whichever they do not want to address at the time. It is the principle goal of *habeas corpus* to provide swift and just determination of every claim and safeguard liberty interests which are paramount in the history of our country. We object to the continued consolidation and joint hearings and orders in two separate cases based on separate and distinct principles of law."

e. Regarding the Court's Order that Bennett and Caraballo file requests in writing for the appointment of counsel:

"We object to an Order which requires Captain Bennett to submit to the court in writing a request for counsel. The US State Department does not allow us mail privileges. We also object to the notion that our claims can be dismissed with prejudice. It is our position that once we, and he, files a *habeas corpus* petition saying that we have been denied communication and mail with the outside world, it is axiomatic that the case cannot be dismissed because we cannot then communicate with the Court. In fact, the Court's Order has put us in worse shape then we were. By putting this threat to dismiss with prejudice in writing, the State Department was emboldened to continue their illegal actions against us, and more so, made the US Embassy far more vicious. The US Consul has even retaliated against Afghan officers and threatened them if they try to pick up or deliver packages to us. Now we have to take over a prison block, create a barricade situation, and threaten a hunger strike to receive enough water to barely survive."

---

[5] For the record, this statement is not entirely correct; the US Marshals Service did provide several documents to plaintiffs in the FOIA case. Although documents were provided, they were heavily redacted in spite of the relevant parties submitting waivers. Here, Mr. Idema is obviously referring to the FOIA requests made from Afghanistan relating to events which transpired in Afghanistan (*i.e.*: the FBI, DOS, US Embassy, and DOJ).

f.  Regarding the Court's Order to file an Amended Petition:

"As I stated previously, we are not going to file an amended petition.  I am not going to file a petition alone.  If the Court feels it must dismiss the petition then please do so as soon as possible so that we may start the appeal process as soon as possible.  I will appeal that decision and fight that decision for the rest of my life."

g.  Regarding the Court's Order which states if Petitioners do not comply the petition will dismissed with prejudice, Mr. Idema states:

"We adamantly object to the Court even considering a dismissal with prejudice after one year of waiting for a court, any court, to finally read our Petition.  Eighty-two years ago the Supreme Court knew there would be situations like this and excluded *res judicata* from defeating the power of *habeas corpus*.  Those cases stand for the proposition that there is no *res judicata* in a *habeas corpus* case.  Dismissal with prejudice means nothing.  We can just re-file, and re-file, and re-file, until some court hears the merits.  I respectfully request the Court read *Salinger v. Loisel*, 265 U.S. 224, 230 (1924) and *Wong Doo v U.S.*, 265 U.S. 239 (1924)."

In my opinion, this situation is untenable, and I feel it is impossible to represent Mr. Idema when we are not allowed to exchange any mail at all, and all mail, including mail from the Court, is read and censored by the US State Department.[6]

These actions also violate the Constitution of Afghanistan which was not only approved by the US government, but the Department of State also helped draft it. (*See* Article 31, The Constitution of Afghanistan, "Confidentiality of conversations, correspondence, and communications between the accused and their attorney shall be secure from any kind of violation."  There are also violations of Article 37, which states that; "Freedom and confidentiality of correspondence, as well as communications of individuals, whether in the form of a letter or via telephone, telegraph, as well as other means, shall be secure from intrusion."  The Respondents' actions have also violated Article 40, which states: "No one's property shall be confiscated without the order of the law and decision of an authoritative court."

---

[6] "Prisoners have the right to unfettered access to the courts, [ ] [t]o hold otherwise would be to offend the traditional notions of justice and fair play that underlie the due process clause." *Morris v. U.S.*, D.C.Va. 1975, 399 F.Supp. 720; *Cf. Hannah v. Larche*, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1959).

6

    In closing, let me assure the Court that these are Mr. Idema and his co-petitioner's statements, verbatim. If the Court prefers, Mr. Idema would like to file a formal motion on these points. It is also his intention to file a motion for a temporary restraining order to prevent the denial of mail, water, and medicine, and to prevent the obstruction of attorney/client privileged communication, along with a motion for summary judgment, and the appropriate memorandum of law, which I would draft for him, and file with the Court. Absent that, Mr. Idema wishes to have their case elevated to the Court of Appeals as soon as possible.

    It is my request that the Court allow Mr. Idema and his co-petitioners to file their motions. Mr. Idema has stated that the petitioners will otherwise endeavor to file a *pro se* motion through a *next friend*, or file an interlocutory appeal of the stay and Order.

    I apologize for the length of this letter, but felt I had to bring these issues to the Court's attention due to the demands of my client and the severity of their situation.

    Respectfully,
    s/
    John Edwards Tiffany
    *Attorney*


    cc: All opposing counsel