UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

J. K. Idema, Brent Bennett,
Edward Caraballo, and,
Zorro Rasuli Banderas,

        *Petitioners,*

vs.

Zalmay Khalilzad, Ambassador, *and*,
Robert S. Mueller, Director of the FBI,

        *Respondents.*

**NEWLY DISCOVERED SUPPLEMENTAL FACTS TO PETITIONERS' MOTION FOR TEMPORARY RESTRAINING ORDER AND RULE 60 MOTION**

**Case # 05 CV 2064 (EGS)**

Assigned Judge: Hon. Emmet G. Sullivan, US District Judge

---

    **NOW COMES,** Petitioner, J. K. Idema, through counsel, and Petitioners Brent Bennett, Zorro Banderas, joining *pro se* without waiving their objection to their denial of counsel for over one year, submit this Memorandum of Supplemental Facts to the Petitioners' Motion most of which were discovered through interviews with Afghan officials over the past two months.

    Respondents' Response as filed by opposing counsel to Petitioners' previously filed motion is disingenuous and misleading at best. Petitioners only recently received that response from the US Embassy in Afghanistan and have not been allowed to mail their reply through the US Embassy. Therefore several specific issues raised by Mr. Lev, and unsworn, unverified facts asserted by Mr. Lev in his pleading are not addressed herein. Be that as it may, they are unavailing at best and carry no weight in this matter absent a sworn affidavit or verification by his clients. As an example, Mr. Lev has no personal knowledge of any facts in Afghanistan, or surrounding Petitioners' incarceration, or related to any assertion regarding mail or conditions, or property, or the contested issue of an alleged "diplomatic pouch" address. In fact, the address that is contested is by no means a "diplomatic pouch" in any sense of the phrase, and the unsworn statements of Mr. Lev are unpersuasive and should assert little if any influence in this case. Other previous assertions by Respondents are contradicted by the recently received March 29,

2006 verification of Petitioners to the supplemental facts herein.  Finally, Mr. Lev's direction to this Honorable Court to take notice of Petitioners' previous ability to get documents to the Court, after months of inability, or months of delay, is evidence of nothing other than Petitioners' tenaciousness and resolve.  Quite frankly, Petitioners find it despicable that an employee of a country founded on Constitutional guarantees of liberty would claim the absence of a liberty deprivation based upon a citizen's ability to furtively circumvent that liberty denial through great cost to family and friends.

**A paramount question** for this Court should be, if a 16 month denial of mail and communication can be circumvented by smuggling mail or covert communication out of a prison system by spending thousands upon thousands of dollars, taking great personal risks, and convincing friendly foreign government officials to clandestinely bypass the US Embassy's illegal mail embargo, then is it still a liberty deprivation?

Is the First Amendment satisfied by the capacity of a citizen to *pray surreptitiously* in his barn to avoid persecution, or their ability to clandestinely publish an anonymous newspaper in the *darkness of a basement* to avoid arrest?  Is the Eighth Amendment satisfied or its protections diluted just because a prisoner *can survive* corporal punishment or imprisonment without food or water?  Did the existence of a covert Underground Railroad during the Civil War make the liberty deprivations foisted upon the oppressed any less important?  Contrary to Mr. Lev's despotic rationale, Petitioners think not.

PETITIONERS ADD TO THEIR MOTION THE FOLLOWING SUPPLEMENTAL MATERIAL FACTS WHICH OCCURRED AFTER THE GOVERNMENT WAS SERVED WITH PETITIONERS' MOTION:

1.  Ed Caraballo was beaten and abused, allegedly at the direction of the US Consul by the Afghan NDS at the direction of American citizens.

2.  According to Afghan officials, the US Ambassador, or persons acting on his behalf, directed President Karzai to confiscate Petitioners' phones and communication from all Petitioners.  Karzai met with the Minister of Justice and ordered the phones confiscated.  The Minister of Justice ordered the para-military Prison Authority to confiscate the phones, and to remove Idema, Bennett, and Banderas from the Geneva Convention compliant officer's quarters, and house them with *al-Qaida* and Taliban

terrorists.  General officers from the United Front Military Forces interceded, and the Prison Authority refused.  Shortly thereafter, Caraballo's phone was seized and Caraballo was again beaten by the NDS acting as agents of the FBI.  Afghan generals refused to follow the orders to confiscate Idema's phone,[1] or change his living conditions.

    3.    The US Embassy then advised prison authorities that they will not allow water deliveries to Idema and Bennett.  When Afghan Commandants found out that Idema and Bennett were sick from drinking ground water treated with bleach, they called the Embassy and were told by Bashir Mamoon at the US Consul's office that they didn't deserve drinking water because "they are probably bathing in it."  There had not been a water delivery for months.  Although these men have not had running water for two years, I can assure this Court that they are not bathing in the pitifully sparse stipend of water the Embassy occasionally delivers.  It should also be noted that the Embassy does not provide this water from their precious budget.  It is provided by the US Marines who would no doubt gladly make a monthly delivery if not prevented from doing so by the US Ambassador.  Further, the US Consul's office has repeatedly threatened to have prison officials fired if they continued to abide by international guidelines for human rights and the Geneva Convention Protocols, and have had at least three commandants fired already for voicing their objection to the continued imprisonment of Idema, Bennett, and Banderas, including one General who physically stepped in front of Adrianne Harchick's vehicle to stop her from leaving without delivering water and money sent by Jack Idema's father.  Apparently Harchick was upset that Idema and Bennett would not meet her alone,[2] and then refused to give him money sent by his father when Idema politely asked her not to count it in front of Afghan officers and a Taliban inmate.  When Harchick tried to leave with the water and money, the Afghan general stepped in front of the car.  He was fired shortly thereafter.  In spite of that, Afghan generals have refused to follow the Embassy's orders, but remain in fear of losing their jobs from U.S. pressure.

---

[1] Apparently at least one journalist also called the Minister of Justice and wanted to know why their phones were not confiscated.

PETITIONERS ADD TO THEIR MOTION THE FOLLOWING SUPPLEMENTAL MATERIAL FACTS WHICH CAME TO LIGHT AND/OR WERE DISCOVERED <u>AFTER</u> AFGHAN MILITARY AND <u>PARA-MILITARY GENERALS REFUSED TO RETALIATE AGAINST IDEMA</u>:

     4.     In July 2004, US Consul Sandra Ingram directed Judge Abdul Basset Bakthyari to find all Petitioners guilty in return for a US Visa and US government protection. Richard Caraballo, brother to Edward Caraballo, has stated that Sandra Ingram told him that if there were no afghan charges there could be no US charges. Therefore, Ingram's statements were clearly indicating that the US was using the Afghan charges to hold the petitioners.

     5.     In August 2004, US Counsel Sandra Ingram retained Wadir Safi, a former minister in the Soviet government to act as a translator during the trial. Ingram had direct knowledge that Wadir Safi was a former Deputy Director of the Soviet/Afghan KGB and had directed and led retaliation, assassinations, executions, and murders of Afghan resistance members and Mujahadeen resistance soldiers who were aligned with and working with the American CIA.

     6.     US Consul Sandra Ingram provided ex-KGB officer Wadir Safi with a lengthy list of allegations and "propaganda points" which she requested Wadir Safi interject into the trial. Ingram offered Wadir Safi financial assistance, then upon information and belief, provided Wadir Safi with financial assistance from a special fund retained for no-oversight expenditures by Ambassador Khalilzad. The same fund was used to provide Chief Judge of the Supreme Court, Mawlawi Fazal Hadi Shinwari[3] with $80,000 for his personal mosque after he supported the original conviction of Petitioners in their first trial.

---

[2] As counsel to Jack Idema I fully agreed with his refusal to meet Harchick alone without a witness to what she might say, do, or allege. I have reviewed evidence which shows that Harchick has a propensity for altering the statements of Jack Idema during conversations.

[3] Shinwari is an Islamic Fundamentalist who has been denounced by Amnesty International, the Union of Human Rights' Defenders, the Afghanistan Human Rights Commission, and other international groups. He is also the cousin of Appeals Court Ismail Abed, and an admitted friend and associate of known Hezb-i-Islami terrorist recruiter Mohammed Sidiq who works directly for Gulbideen Hekmatyar, a terrorist on the US government's most wanted list and one of the prime targets of Idema and his task force during 2004.

Supplemental Verified Statement of Material Facts    4    *Idema, et al v. Khalilzad, et al.* #05cv2064 (EGS)

7.      In December 2005, US Consul Russel Brown met with each member of the Appeals Court which were conducting a trial *de novo*.  These included: Chief Judge Ismail Abed, Chief Religious Judge Saheeb Noor, Second Deputy Judge Latif, Senior Religious Judge Azzizullah, and several others.   Brown requested that each judge show their allegiance and support for Ambassador Khalilzad, President Karzai, and "America" by upholding the first court's guilty verdict.  Initially each and every judge refused and in the first phase of the trial *de novo* and entered a verdict finding all Afghans not guilty, resulting in an order for the release of four Afghan citizens.  Realizing the implications, US Consul Russel Brown met with each of the judges again.  This time the judges refused again, except for Judge Abed, who resisted but was open for "suggestions."  Judge Abed agreed to assist the US Ambassador if he could visit the United States.  Abed also requested a cash incentive.

8.      In February 2005, Abed was sent to the United States on a three-week all expense paid junket by the US Department of State and Department of Justice.  This occurred DURING the trial *de novo*, and therefore Judge Abed was absent for that trial.  Abed toured Durham, Washington, Fairfax, Reno, Los Angeles, and other cities.  During his first stop in Raleigh, North Carolina, Abed met with Master Sergeant Thomas R. Bumback, a retired Special Forces Intelligence officer who holds a Top Secret security clearance.  Abed told Bumback that Jack Idema and the others were "completely innocent" and would be released in a few weeks.  Over the next few days, Abed called Afghanistan and spoke to Jack Idema and to the Court.  Abed stated that he had already concluded they were innocent and requested they conclude the trial as fast as possible and release Idema and the others before his return and before pressure could be put on him to change his decision and the decision of the court.

9.      Over the next few weeks, the US Consul Russel Brown, and other US government employees, contacted the Afghan Appeals Court and requested delays so that the Consul could attend the trial.  Although he was given repeated delays, the Consul never did attend, instead sending an Afghan aide named Bashir Mamoon to be present.  The US Embassy also requested the Court wait for the return of Chief Judge Ismail Abed.

Just two days before Abed's return, the Appeals Court declared all men innocent and directed a press conference to convene upon Abed's return.  However, when Abed returned he stated that although the men <u>were innocent</u>, they could not be released.

10.     It was later discovered that Judge Noor resigned from the Court thereafter in protest to Jack Idema and the others being held after being found innocent.

11.     A lieutenant governor in Afghanistan was present during several of the instances during which the US Consul pressured the Appeals Court judges, and he is prepared to give testimony to the Court supporting these statements.  Master Sergeant Bumback is also prepared to give testimony to the Court and has expressed his desire that this Court protect him from retaliation and contact by the FBI, who have repeatedly interrogated him and his family about this case, and have repeatedly harassed him.

PETITIONERS ADD TO THEIR MOTION AND PETITION THE FOLLOWING SUPPLEMENTAL MATERIAL FACTS WHICH WERE PREVIOUSLY KNOWN, BUT WHICH WERE VERIFIED BY <u>SENIOR OFFICIALS OF THE AFGHAN GOVERNMENT IN MARCH AND APRIL 2006:</u>

12.     When the US Embassy found out that the petitioners were going to be found innocent, US Consul Russel Brown requested the Afghan court delay their decision and wait until Ambassador Khalilzad could speak to Mawlawi Fazal Hadi Shinwari. The Appeals Court then told petitioners they would be released immediately anyway, and requested petitioners to participate in a press conference and "show their evidence" so that "the world will know the truth."  The release and press conference was to occur two days later.  During this time, Respondent Khalilzad contacted Shinwari and requested the Court delay their decision until the return of Judge Abed.  Shinwari followed the orders of Khalilzad; the press conference was cancelled.[4]

13.     Two weeks later, Abed returned, held a hearing, and stated, on the record, that the men were innocent of all charges, but he was unable to release them.  Abed also

---

[4] Shortly thereafter, it was announced that Khalilzad would be transferred to Iraq and Shinwari wrote a personal letter on behalf of the Supreme Court to President Bush requesting Khalilzad remain.  They are both from the same religious and ethnic group and both had family ties to the Taliban.

stated that he had been compelled to continue the imprisonment of the Petitioners because the "embassy had been so nice to [him] and given [him] a trip to America."

14.   Subsequently, each of the judges, and the prosecutor, told Petitioners that they had been "ordered" not to release the men.

PETITIONERS ADD TO THEIR MOTION THE FOLLOWING SUPPLEMENTAL
<u>MATERIAL FACTS RELATED TO ED CARABALLO</u>:

15.   Contrary to Ori Lev's <u>unsupported</u>, <u>third hand</u>, <u>unsworn</u>, <u>hearsay</u> statements derived from unknown parties and news reports filed by journalists neither present at the prison siege or with any first hand knowledge of the events, a) Caraballo did have his life repeatedly threatened during the February/March siege at Pulacharke Prison,[5] b) Caraballo's phones (two of which were supplied by the US Embassy in the hopes that Caraballo would cooperate against Idema) were used by revolting terrorists, but only as a result of terrorist death threats, c) Caraballo has previously admitted that his statements to CNN were made under duress as the interview was made with at least six terrorists present in or around the room and threatening Caraballo, d) Caraballo admitted to Idema, Bennett, and Banderas that he made the phone calls to prevent his murder, e) Caraballo stated to Idema, Bennett, and Banderas that the reason he said US Consul Adrianne Harchick was keeping him safe was because by saying this Harchick would continue to deliver mail and relief packages to him, f) Caraballo stated to Idema, Bennett, and Banderas that without the ability to receive care packages and mail from Harchick and

---

[5] Since Mr. Lev thinks that newspaper articles constitute evidence in federal habeas corpus case, petitioner Idema refers Mr. Lev to the New York Times article dated May 1, 2006, in which Carlotta Gall wrote; "Mr. Caraballo said his release was expedited after he narrowly escaped a lynching during a prison riot." For the record, neither petitioners nor Idema's counsel actually believes, or asserts, that newspaper articles constitute evidence in a case with national security implications upon which the lives of three men still hinge.  However, it is interesting to note that Mr. Lev employs the same tactics as former Taliban prosecutor and "reformed terrorist" Nahim Dawari used in their prosecution.  "Taleb Dawari" also held up newspaper articles during their Afghan trial and used them as his ONLY actual evidence in the trial, other than the unsworn press conference statements of three of his witnesses.  That raises questions as to whether or not the US government actually prepared Dawari's prosecution case which, like Mr. Lev's defense in this case, was based upon newspaper articles.

send letters to his daughter he would commit suicide, g) in April 2006 Caraballo attempted suicide, and repeatedly told prison officials that he would commit suicide, h) Caraballo made several of these statements in front of Idema, Banderas, and Bennett who have first hand knowledge that these events occurred.

16. Mr. Lev would have this Court actually believe that a CNN interview during a prison revolt is actually evidence that "raises questions – yet again – as to whether the filings purportedly made on his behalf are in fact authorized by him." First, Mr. Caraballo neither needed to authorize them, or even know about them. Mr. Lev should review the fundamental concept of *next friend*. Apparently Mr. Lev also thinks that Mr. Caraballo's statement that "I would say to the American forces… or Afghan forces, that they should not storm the prison," actually means something. Caraballo was surrounded by terrorists, wounded prisoners, dead bodies, and had hundreds, if not thousands of bullets enter his cellblock.

17. Quite frankly, I don't blame Caraballo for saying that, or anything that would help him survive the situation. Exactly who does Mr. Lev think is getting killed first by the terrorists when the authorities storm the prison? Caraballo is after all, an American, their enemy, and a journalist. As to Lev's allegations that Caraballo disseminated false information during the revolt, Caraballo did let the terrorist use his phone to contact the media. Imagine that? You are surrounded by terrorists, who want to "lynch" you,[6] behead you, and kill you, and you let them use your phone. Possibly Mr. Lev thinks this journalist should have fought to the death? I would submit that fighting to the death should be left to soldiers.

18. Lastly, as to claims that the revolt was over when Petitioners filed their motion. First, we do not have the luxury of unobstructed communication such as Mr. Lev has with his clients. Second, the press reports Mr. Lev quoted were, according to Bennett, Idema, and Banderas, written by journalists who were kept more than two kilometers from the prison during the revolt. Third, the Afghan Ministry of Justice disseminated that false information in an effort to divert media attention away from the

---

[6] Caraballo's statement to the NY Times AFTER he was released and no longer in danger.

Supplemental Verified Statement of Material Facts    8    *Idema, et al v. Khalilzad, et al.* #05cv2064 (EGS)

prison revolt during the US president's visit the next day, and fourth, news articles are basically worthless when contradicted by eyewitness reports sworn under oath.

Petitioners Idema, Bennett, and Banderas have read all statements regarding events which occurred prior to April 2006, and have verified and sworn to those facts in the attached verification.

This 2nd Day of May 2006.

        _____S/_____
        John Edward Tiffany,
        Attorney (JT7322)
        *For Petitioner Idema*
        PO Box 190
        55 Washington Street
        Bloomfield, NJ  07003
        Ph:  973/566-9300
        Fax: 973/566-0007

## **V**ERIFICATIONS OF **P**ETITIONERS

**Pulacharke Prison, Kabul, Islamic Republic of Afghanistan: ss.**
1. I am a Petitioner in the §2241 Case of Idema, *et al.,* v. Khalilzad, *et al., DCDC,*
2. I declare under the penalties of perjury as follows, but expressly not limited thereto:
3. The facts stated in the attached pleading are true and accurate, and any contrary facts asserted by the government or Ori Lev are patently false lies.
4. I join in the attached Motion and the additional facts stated in Petitioners' Motion under 28 U.S.C. §2241, are personally known to me and, if called as a witness, I could testify competently thereto, except to those facts stated under information and belief, which I believe to be true.
5. Further Declarant sayeth not.

Executed under the penalties of perjury, in accordance with 17 U.S.C. §1746 on this 29th Day of March 2006, in the Islamic State of Afghanistan.

　　　　　　　　　　　　　　　　　　　　　　　J. K. Idema, Declarant/Petitioner

**Pulacharke Prison, Kabul, Islamic Republic of Afghanistan: ss.**
1. I am a Petitioner in the §2241 Case of Idema, *et al.,* v. Khalilzad, *et al., DCDC,*
2. I declare under the penalties of perjury as follows, but expressly not limited thereto:
3. The facts stated in the attached pleading are true and accurate, and any contrary facts asserted by the government or Ori Lev are patently false lies.
4. I join in the attached Motion and the additional facts stated in Petitioners' Motion under 28 U.S.C. §2241, are personally known to me and, if called as a witness, I could testify competently thereto, except to those facts stated under information and belief, which I believe to be true.
5. Further Declarant sayeth not.

Executed under the penalties of perjury, in accordance with 17 U.S.C. §1746 on this 29th Day of March, in the Islamic State of Afghanistan.

　　　　　　　　　　　　　　　　　　　　　　　Brent Bennett, Declarant/Petitioner

**Pulacharke Prison, Kabul, Islamic Republic of Afghanistan: ss**.
1. I am a Petitioner in the §2241 Case of Idema, *et al.,* v. Khalilzad, *et al., DCDC,*
2. I declare under the penalties of perjury as follows, but expressly not limited thereto:
3. The facts stated in the attached pleading are true and accurate, and any contrary facts asserted by the government or Ori Lev are patently false lies.
4. I join in the attached Motion and the additional facts stated in Petitioners' Motion under 28 U.S.C. §2241, are personally known to me and, if called as a witness, I could testify competently thereto, except to those facts stated under information and belief, which I believe to be true.
5. Further Declarant sayeth not.

Executed under the penalties of perjury, in accordance with 17 U.S.C. §1746 on this 29th Day of March, in the Islamic State of Afghanistan.

　　　　　　　　　　　　　　　　　　　　　　　Zorro Rasuli Banderas,
　　　　　　　　　　　　　　　　　　　　　　　Declarant/Petitioner

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing Supplemental Facts to Petitioners' Motion has been duly served upon the below named Respondents by depositing it in the mail in the U.S. Post Office, *via* First Class mail, on the 3rd day of May, 2006, addressed as follows;

> ORI LEV, DC # 452565
> Senior Trial Counsel
> United States Department of Justice
> Civil Division, Federal Programs Branch
> Mail: P.O. Box 883, Washington, DC 20044
> Delivery: 20 Massachusetts Ave., NW, Rm 7330
> Washington, DC 20001
> Tel: (202) 514-2395
> Fax: (202) 318-7589

This 2nd day of May 2006.

_____S/_____
John Edwards Tiffany