# A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.K. IDEMA, et al., ) | |
| ) | |
| Petitioners, ) | No. 05 CV 2064 (EGS) |
| ) | |
| v. ) | |
| ) | |
| RONALD NEUMANN, et al., ) | |
| ) | |
| Respondents. ) | |

## DECLARATION OF EDWARD A. BETANCOURT

I, Edward A. Betancourt, hereby declare as follows:

1. I am the Director of the Office of Policy Review and Inter-Agency Liaison ("PRI") in the Directorate of Overseas Citizens Services ("OCS") of the Bureau of Consular Affairs ("CA") in the United States Department of State. I make this declaration based on my personal knowledge and information obtained in the course of my employment.

2. My office, CA/OCS/PRI, is responsible for providing legal advice to CA/OCS about the performance of OCS functions, and to U.S. Embassies and Consulates abroad about the performance of citizens services on a case-by-case basis, including services in connection with U.S. citizens and nationals incarcerated overseas. My office is also responsible for drafting the Department's regulations at Title 22 of the Code of Federal Regulations relating to such services, and for drafting Volume 7 of the Foreign Affairs Manual ("FAM") which contains the Department's instructions to its employees relating to such services. In providing legal advice and drafting regulations and FAM provisions, my office works in consultation with the Legal Adviser's Office of the Department

of State to ensure a consistent understanding of the legal principles applicable to the performance of overseas citizens services.

3. OCS functions include, <u>inter alia</u>, providing consular services to U.S. citizens and nationals incarcerated overseas. Guidance regarding those services is published in 7 FAM Chapter 400 and includes the delivery of mail to overseas U.S. citizen and national prisoners. Relevant portions of 7 FAM Chapter 400 cited below are attached hereto as Exhibit 1.

4. There is no statutory or regulatory requirement that U.S. Embassies and Consulates deliver mail to overseas U.S. citizen and national prisoners. Such mail delivery is a discretionary function performed as an accommodation and is undertaken "as the circumstances warrant." 7 FAM 462(4); see also 7 FAM 465.6-1(b) (consular personnel "may" deliver mail in "limited cases").

5. U.S. Embassies and Consulates are not required by statute or regulation to provide consular services to overseas non-U.S. citizen or national prisoners. Consistent with well-established principles of international law and treaties on consular relations, the protection and assistance that U.S. Embassies and Consulates can provide is generally limited to U.S. citizens and nationals. In the context of prolonged incarcerations, 7 FAM 461 specifically provides that its guidance regarding the obligations and discretionary functions that U.S. Embassies and Consulates may provide, including the discretionary delivery of mail, "pertains **only** to U.S. prisoners" in post-sentence status. 7 FAM 461 (emphasis in original). See also 7 FAM 465.6-1(b). U.S. Embassies and Consulates, including the Embassy in Kabul, have in the past refused requests that consular services be provided to foreign citizen overseas prisoners.

2

6. Petitioner Banderas is not a citizen or national of the United States. Consistent with the Department's long-standing practice as well as established principles of international consular relations, he is therefore not eligible as a foreign prisoner to receive consular services from the U.S. Embassy in Kabul.

7. Providing consular services to non-citizens or nationals is not consistent with well-established principles of international law and not contemplated by international conventions on consular relations. To provide such services to non-citizens or nationals might reasonably be construed as the performance of a sovereign act within the territorial and legal jurisdiction of a foreign state and could have a negative effect on the United States' bilateral relations with the state in which such services were performed. Just as the United States expects foreign nations to act within the bounds of the customary international law regarding consular functions, we instruct our Embassies and Consulates in foreign states to do so. Delivering mail to foreign citizens incarcerated in Afghanistan could be considered by Afghanistan to be a violation of its sovereignty, and could impair both our ability to effectively provide consular services to U.S. citizens and nationals in Afghanistan and our bilateral relations with Afghanistan.

8. It is the understanding of the U.S. Embassy in Kabul that Petitioners Idema, Bennett and Banderas occupy the same cell at the Pol-e-Charke prison.

9. Due to security concerns, U.S. Embassy personnel stationed in Afghanistan do not currently make regular visits to Pol-e-Charke prison. The Embassy does however deliver properly addressed mail it receives for Petitioners Idema and Bennett, security permitting. Such delivery may take several days and can be significantly delayed due to security concerns.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, DC. this 28th day of July, 2006.

_Edward A. Betancourt_
Edward A. Betancourt

**1**

# 7 FAM 460
# PROLONGED IMPRISONMENT

*(CT:CON-093;   10-29-2004)*
*(Office of Origin:   CA/OCS/PRI)*

## 7 FAM 461  DEFINITION

*(CT:CON-093;   10-29-2004)*

Generally, prolonged imprisonment implies that the accused has been tried, convicted and has begun serving the sentence the judicial power imposed, although appeals may be pending.  While your most time-consuming and effective actions tend to take place before this - during the early arrest, interrogation, and trial phases - the convicted prisoner should also be provided with adequate consular support while serving his or her term.  Please note that the guidance in this section pertains **only** to U.S. prisoners in **post-sentence** status.

## 7 FAM 462  CONSULAR REQUIREMENTS

*(CT:CON-093;   10-29-2004)*

Your professional obligations during a convicted U.S. citizen or national's imprisonment generally include:

(1)   Arranging visits with the prisoner on a scheduled basis consistent with the conditions of imprisonment (See 7 FAM 463.2 below);

(2)   Monitoring the prisoner's health and mental well being, taking appropriate action whenever you believe there is reason for concern;

(3)   Administering any ongoing OCS TRUST or EMDA-1 programs.  (See 7 FAM 430);

(4)   Bringing the prisoner funds, mail, reading material, etc. as circumstances warrant;

(5)   Remaining alert for any signs of mistreatment by authorities or other prisoners;

(6)   Assisting the prisoner in maintaining contact with his or her attorney, particularly when there is an appeal pending; and

(7)   Providing current information on the prisoner's status to family members, congressional inquirers, and the Department.

7 FAM 460  Page 1 of 16

(4) A dual-national, bilingual U.S. citizen or national prisoner may be willing to conduct informal classes, either gratis or for a small stipend from fellow prisoners desiring training.

## 7 FAM 465.5-2  Technical and Trade Skills

*(CT:CON-093;   10-29-2004)*

Some prison systems do provide various forms of technical or trade training at little or no cost, often as part of a "learn on the job" work program.

## 7 FAM 465.5-3  Formal Education

*(CT:CON-093;   10-29-2004)*

Correspondence courses are often the best resource for advancing formal education, from earning a GED through secondary and post-secondary schooling.  There are many sources for identifying such courses, including educational organizations and state universities at the prisoner's legal US residence.

## 7 FAM 465.6  Mail

*(CT:CON-093;   10-29-2004)*

Letters and packages from home constitute a real lifeline for many prisoners, and their replies in turn help reassure anxious family members.  Given the importance mail has to the U.S. citizen or national prisoner, and the potential effects on mental well-being, you should do everything possible to help ensure a smooth flow of mail between prisoners and their family members:  Your assistance could include:

(1) Make certain that prisoners and particularly family in the U.S. know exactly how to address mail to ensure delivery to the prisoner, and the international postage required;

(2) Caution families that there is generally no assurance of privacy for mail to and from the prisoner.  Many prisons have elaborate censoring procedures, and most will at least open and examine packages and envelopes;

> **FYI:  Some countries may severely restrict the personal effects and literature a prisoner may receive, and may confiscate goods or materials for local ethical or religious reasons that are often not well understood by the family members.**

(3) Sometimes mail is inordinately delayed or confiscated because the

prison authorities do not have the capacity to review correspondence in English. If this problem develops, you may wish to advise families to try obtaining the services of a certifying translator in the United States who can attach a copy in the host country language to letters sent to the prisoner; and

(4) When families are sending mail directly to the prison, try during your routine visits to determine with the prisoner what mail has been sent and received, so you can help the family identify letters or parcels that have gone astray, or have been rifled or confiscated by local authorities.

## 7 FAM 465.6-1  Receiving Prisoner Mail At Post

*(CT:CON-093;  10-29-2004)*

a. There are instances when prisons do not offer mail service, or are delaying or improperly confiscating mail to the point where the family simply cannot rely on direct mail to the prison.

b. In such limited cases, and assuming there is no other workable alternative, such as sending mail to the prisoner's attorney, you may make arrangements with family members to send mail for the U.S. citizen or national prisoner through you under the following conditions and restrictions:

   (1) The mail is to be addressed specifically to you, or another designated consular officer (ACS chief, ARRESTS officer, etc.) and the prisoner's name should not appear on the outside of the envelope or package;

   (2) The prisoner and family understand that you cannot accept and deliver any sealed mail. You must examine all letters and parcels upon receipt;

   (3) You may limit the frequency of letters, and/or the size and number of packages, depending upon post resources;

   (4) You will neither deliver nor return mail that contains contraband, items prohibited by prison authorities, or mail that encourages or outlines any extra-legal activity, such as escape plans;

   (5) Funds must be transmitted through the OCS TRUST procedure. You cannot accept cash by mail in these circumstances;

   (6) You can deliver mail directly to the prisoner only if allowed to do so by prison authorities. Mail may have to go through the same screening and censoring procedures as if sent directly to the prison; and

   (7) Depending upon the distance to the prison, you may not be able to