**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| J.K. IDEMA, <u>et al.</u>, | ) |
| | ) |
| Petitioners, | )    No. 05 CV 2064 (EGS) |
| | ) |
| v. | ) |
| | ) |
| RONALD NEUMANN, <u>et al.</u>,[1] | ) |
| | ) |
| Respondents. | ) |

**RESPONDENTS' OPPOSITION TO**
**PETITIONERS' EMERGENCY MOTION**
**FOR TEMPORARY RESTRAINING ORDER**

**PRELIMINARY STATEMENT**

In what can best be described as an abuse of this Court's process, petitioners have for the

second time during the pendency of this litigation filed a frivolous motion for a temporary

restraining order.  Apparently upset at the likely imminent release of Petitioner Brent Bennett

from Afghan custody, Petitioner Jack Idema has brought the instant motion asking this Court to,

<u>inter alia</u>, require that Bennett be returned to his prior place of confinement.[2]  Petitioners' Motion

---

[1] Petitioners assert that Secretary of State Condoleezza Rice was dismissed as a respondent on May 24, 2005.  Moreover, as previously noted, Ambassador Neumann is the current United States Ambassador to Afghanistan, and is automatically substituted as a Respondent in Ambassador Khalilzad's place.

[2] The Motion is signed by John Tiffany, counsel for Petitioner Idema.  Notwithstanding Mr. Tiffany's repeated statements on the record that he represents only Petitioner Idema, the body of the motion is purportedly made on behalf of both Petitioner Idema and Petitioner Bennett, Mot. at 1, and the text of the Motion likewise speaks of "petitioners," <u>id.</u> at 2. Respondents also note that in a recent filing in the companion FOIA case, Mr. Tiffany asserted that he is "seeking to withdraw" as counsel in this case.  <u>See</u> Motion for Vaughn Index (docket 19) at 1. n.1, filed in <u>Idema v. Dep't of State</u>, No. 05-1334 (EGS).

– dramatically captioned "Life and Death Emergency Motion" – should be denied for three

independent reasons.  First, petitioners have utterly and completely failed to provide any

evidentiary support for the outlandish factual assertions that form the basis of their Motion.

Second, as demonstrated in the attached declaration, the factual assertions set forth in the Motion

are false.[3]  Third, as set forth in respondents' opposition to petitioners' earlier motion for a

temporary restraining order, the underlying Petition should be dismissed for lack of habeas

jurisdiction, pursuant to the act of state and international comity doctrines, and because it raises

nonjusticiable issues and seeks relief not available in a habeas proceeding.  As the Petition is not

properly before this Court, the instant Motion should be denied.

## ARGUMENT

**I.    The Motion Should Be Denied Because Petitioners Have Failed to Offer Any Evidence In Support of Their Factual Assertions**

Petitioners' Motion contains some rather bold factual assertions: that the United State

Consul in Afghanistan "ordered the Pulacharke Commandant, General Shamir Amapoor, to use

deadly force to take [Petitioner] Bennett into custody and deliver him to US custody," Pets. Mot.

at 1; that a "new [Afghan] General" was "brought in by the US Embassy" and was "specifically

told to use deadly force against [Petitioners] Idema and Bennett," id.; that Petitioner "Idema is

holding off forces under the direct control and command of the US Embassy, specifically the US

Consul," id. at 2; and that "the US Consul has ordered Afghan forces loyal to Hamid Karzai to

'subdue Idema dead or alive,'" id.  Notwithstanding the extraordinary nature of these allegations

– essentially accusing the United States Consul of ordering the use of deadly force by officers of

---

[3] Indeed, petitioners' factual claims are so unfounded as to raise serious questions as to counsel's compliance with Fed. R. Civ. P. 11.

a foreign state against an American citizen – and the similarly extraordinary relief sought by petitioners in their motion,[4] petitioners have provided <u>no</u> evidentiary support whatsoever in support of their motion.[5]  For this reason alone, the Motion should be denied, as petitioners have utterly failed to meet their burden of establishing their entitlement to any relief.

## II.     The Factual Allegations Set Forth in the Motion are False

There is good reason for petitioners' lack of evidence to support their factual allegations: those allegations are false.  As set forth in the attached declaration of the U.S. Consul in Afghanistan, Edward P. Birsner, he has not ordered anyone to take any of the actions alleged in petitioners' Motion.  Declaration of Edward P. Birsner, ¶¶ 5, 8-9, attached hereto as Exh. 1.  Rather, it appears that what prompted the Motion is the likely imminent release, and possible deportation from Afghanistan, of Petitioner Bennett.  See <u>id.</u>, ¶¶  3, 6.

As explained by Consul Birsner, the Government of Afghanistan recently issued an amnesty, on the occasion of Afghan independence day, releasing all prisoners with sentences of less than 5 years who have served more than one-quarter or one-half of their sentences.  <u>Id.</u>, ¶ 3.  Petitioner Bennett was apparently included in this group of prisoners and was therefore considered to have been released under the amnesty.  <u>Id.</u>

---

[4] Petitioners ask this Court to, <u>inter alia</u>, order respondents to direct where and how petitioners will be confined within an Afghan prison.  <u>See id.</u> at 2 (seeking an order requiring respondents to "direct their forces to place Idema and Bennett back in their original area of confinement").

[5] The only "evidence" submitted by petitioners is a purported letter from the Afghan Ambassador to the United Arab Emirates to the new Chief Justice of the Afghan Supreme Court.  <u>See id.</u>, Exh. 1.  Setting aside the serious questions regarding the authenticity of the letter and petitioners' proffered translation of it, the letter offers absolutely no support for the factual allegations upon which the Motion is based.

In light of petitioner Bennett's imminent release from prison, Mr. Birsner and his assistant traveled to Pol-e-Charkhi prison on Sept 3, 2006 – at great personal peril – in order to provide Mr. Bennett with consular assistance.  Id., ¶ 4.   To facilitate Mr. Bennett's likely departure from Afghanistan, the Embassy wanted to provide him an opportunity to sign an application for a replacement passport (his previous one, now expired, having gone missing) and an application for a loan to repatriate him (in the event he otherwise lacked the financial resources to travel to the U.S.).  Id.  Mr. Bennett, however, refused to see Mr. Birsner.  Id.

On Thursday, September 28, 2006 – the very day the instant Motion was filed – prison officials informed the Embassy that they had removed Mr. Bennett from the cell he shared with Mr. Idema (one or both of them had apparently refused such separation in the past), and that Mr. Idema had apparently locked himself in his cell.  Id., ¶ 6.  Prison officials also informed the Embassy that they intended to bring Mr. Bennett to the Embassy the following morning to have him sign all necessary documentation for a passport and/or financial assistance, after which the prison officials will return him to the prison until they were ready to deport him.  Id.

On the morning of September 29, officials from the prison did as they said, escorting Mr. Bennett to the Embassy where he willingly completed an application for a replacement U.S. passport and an application for a repatriation loan and its associated promissory note.  Id., ¶ 7. The Embassy is now in the process of obtaining an air ticket for Mr. Bennett's return to the United States.  Id.

Contrary to the allegations in the TRO Motion, upon learning of Mr. Bennett's possible release, the U.S. Embassy expressly told Afghan government officials that the Embassy was not in a position to take custody of Mr. Bennett upon his release, id., ¶ 5, and the Embassy has no

4

intention of doing so, <u>id.</u>, ¶ 7.  The Embassy also reminded the Afghan officials that if they wished Mr. Bennett to leave Afghanistan he would likely need a new passport and possibly financial assistance to buy a plane ticket home, and that the Embassy could assist him in those two specific matters.  <u>Id.</u>, ¶ 5.

Mr. Birsner also expressly denies the allegations in the Motion that he ordered the Pol-e-Charkhi Commandant to use deadly force to take Mr. Bennett into custody and deliver him into U.S. custody, and that he asked anyone to deliver Mr. Bennett or Mr. Idema to U.S. custody.  <u>Id.</u> ¶ 9.[6]  Mr. Birsner also confirms that there are no forces under his control or command at Pol-e-Charkhi prison and that he has not ordered Afghan forces loyal to President Karzai (or anyone else) to "subdue Idema dead or alive."  <u>Id.</u>  Finally, Mr. Birsner refutes the premise of petitioners' Motion – to wit, that United States agents are operating at Pol-e-Charkhi.  <u>Id.</u>

Petitioners' failure to provide any evidentiary support for their Motion would be reason enough to deny it.  Mr. Birsner's declaration, which refutes every factual assertion petitioners make, necessitates such a result.  On the record before the Court, only one conclusion is possible – petitioners' Motion is frivolous and should be denied.

## III.   Petitioners Cannot Establish a Likelihood of Success on the Merits Because Their Petition Should Be Dismissed

The underlying Petition in this case is based on the notion that although Petitioners are (or, in the case of Petitioner Caraballo, were) incarcerated in an Afghan prison, serving a prison sentence imposed by an Afghan court following a conviction for violating Afghan law, the

---

[6] Indeed, on several occasions the Embassy has conveyed to Afghan officials the Embassy's desire that prison officials not use force on Mr. Bennett solely to compel him to meet with Embassy officials.  <u>Id.</u>

5

American respondents are somehow responsible for their incarceration.  As explained at length in respondents' opposition to petitioners' prior TRO Motion, the Petition should be dismissed for numerous reasons.  See Respondents' Opposition to Petitioners' Motion for Temporary Restraining Order and Other Relief and Rule 60 Motion ("Prior TRO Opposition") (docket no. 14).  As explained in that opposition, because Petitioners are (or were) in the custody of a foreign government, pursuant to a criminal sentence imposed by that government, this Court lacks habeas jurisdiction.  Id. at 10-17.  In addition, adjudication of Petitioners' claims would necessarily require this Court to pass judgment upon the official acts of the Islamic Republic of Afghanistan, something that this Court cannot do pursuant to the act of state doctrine and notions of international comity, which each provide an independent basis upon which the Petition should be dismissed.  Id. at 17-22.  Moreover, the relief sought by Petitioners in the Petition is unavailable to them:  to the extent they ask this Court to oversee the Executive's communications with a foreign sovereign, their claims are non- justiciable, and the rest of the relief they seek is not available to a habeas petitioner.  Id. at 23-33.[7]  For all of these reasons, the Court should dismiss the Petition.  A fortiori, the instant Motion should be denied, as it seeks to invoke this Court's injunctive power in a case not properly before it.  In other words, because Petitioners cannot establish a likelihood of success on the merits of their underlying claim, they cannot establish any entitlement to preliminary injunctive relief.

* * *

In their opposition to petitioners' prior motion for a temporary restraining order,

---

[7] In light of the time constraints imposed by the Court in responding to the instant Motion, Respondents to not repeat these arguments here at length, but incorporate them by reference.

respondents noted that "[a]s a practical matter, Petitioners are now utilizing the pendency of the instant action to provide them ready access to the Court for their various and sundry complaints. This is improper and inappropriate.  The Court should not allow Petitioners to shoehorn their random and disparate complaints into a habeas petition, let alone allow such claims to form the basis of emergency motions for injunctive relief.  Put simply, the Court should not countenance such abusive litigation.  See also Government's Response to February 9 Letter to Court (docket no. 6) at 2 (asking that Petitioners not be permitted to file any motions for preliminary injunctive relief given the posture of the case)." Id. at 33.  The instant Motion is yet another example of petitioners making outlandish allegations, and, by captioning such allegations "Emergency Motions for Temporary Restraining Order," requiring the government to expeditiously respond.[8] Respondents thus respectfully request that the Court promptly dismiss the Petition for the reasons set forth herein and in the Prior TRO Opposition, and thus put an end to what appears to be the repeated abuse of process by petitioners.

## CONCLUSION

For all of these reasons, Petitioners' Motion should be denied, and the Petition dismissed.

Dated: September 29, 2006.          Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

---

[8] Petitioner Idema recently filed an equally unfounded Motion for Vaughn Index in the companion FOIA case, which serves as another example of the conduct at issue.  Respondents will respond to that Motion in the time provided by the local rules.

7

VINCENT M. GARVEY
Deputy Branch Director


   /s/ Ori Lev
ORI LEV, DC # 452565
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
Mail:  P.O. Box 883, Washington, DC  20044
Delivery:  20 Massachusetts Ave., NW, Rm 7330
          Washington, DC 20001
Tel:  (202) 514-2395
Fax:  (202) 318-7589
Email:  ori.lev@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has, this 29th day of September 2006, caused a copy of the foregoing Respondents' Opposition to Petitioners' Emergency Motion for Temporary Restraining Order to be served, via U.S. mail, postage prepaid, upon the following persons at the following addresses:

> Brent Bennett c/o
> Consular Section
> Edward P. Birsner, Consul
> American Embassy
> Great Massoud Road
> Kabul, Afghanistan

> Edward Caraballo
> 60 Erie Street
> Jersey City, NJ 07302

John Tiffany, attorney for Petitioner Idema, will be served via the Court's ECF system.


_____/s/  Ori Lev_____
Ori Lev

9