**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| J.K. IDEMA, *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | Civil Action No. 05-2064 (EGS) |
| v. | ) | |
| | ) | |
| CONDOLEEZZA RICE, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION**

Petitioners J.K. ("Jack") Idema, Brent Bennett, Edward
Caraballo, and Zorro Rasuli Banderas challenge their current, in
the case of Idema, and prior, in the case of the other
petitioners, incarceration in Pulacharke Prison in Afghanistan.
Although petitioners concede that they are (or were) in the
physical custody of the government of Afghanistan, they argue
that they are (or were) in the actual custody and control of the
respondents.  Pending before the Court is a petition for habeas
corpus.  In addition, petitioners have filed a series of other
motions intimately related to their underlying habeas petition.
Upon careful consideration of the petition, the various motions,
responses and replies thereto, supplemental briefing on the
question of jurisdiction, the applicable law, and the entire
record herein, the Court dismisses as moot the habeas claims of
Banderas, Bennett and Caraballo.  As discussed below, the Court

orders the respondents to provide a response to Idema's factual allegations.  The Court denies all other pending motions.

## I.    BACKGROUND[1]

On March 17, 2005, the petitioners filed a petition for writ of habeas corpus in the United States District Court for the Southern District of New York.  Their petition has since been transferred to this Court.

Petitioners Idema, Bennett, and Caraballo are United States citizens.  Petitioner Banderas is a citizen of Afghanistan. Idema and Bennett are former members of the United States military and claim to be currently employed by Counter-Terrorist Group U.S. ("Counterr Group").  Caraballo was an investigative journalist at the time of the events in this case.  Banderas was allegedly assigned to Counterr Group as an interpreter, liaison, and aide to Idema.

Petitioners claim that they provided military and humanitarian assistance in support of the U.S. and Coalition war on terror in Afghanistan.  Counterr Group allegedly developed intelligence identifying terrorist threats to U.S. citizens and diplomats and delivered intelligence on al-Qaida to various U.S. intelligence agencies.  Petitioners also claim that they captured numerous terrorists in Afghanistan between April and July 2004.

---

[1] The facts set forth in this section are those alleged and verified by petitioners in their petition for writ of habeas corpus and various affidavits.

Some of these individuals were turned over to U.S. and Afghan
military forces.  Others were held by petitioners while awaiting
transfer to U.S. custody.  Petitioners claim that all of Counterr
Group's activities related to these suspected terrorists were
done with the full knowledge of Afghan officials and Coalition
forces.

On July 5, 2004, all of the petitioners were arrested by
Afghan forces that they claim were "under the control [of] the
FBI."  Pet. for Writ of Habeas Corpus at 17, ¶ 13.  After their
arrest, petitioners claim that they were repeatedly interrogated,
subjected to deplorable prison conditions, and tortured.  They
allege that their torture was conducted "with FBI agents in close
proximity and directing the interrogation."  *Id*. at 18, ¶ 16.
Petitioners also allege that U.S. Embassy officials and FBI
Director Robert Mueller were aware of this torture but the U.S.
government did nothing to intervene and the FBI actually
encouraged the torture.

Petitioners were eventually charged with various crimes
under Afghan law including entering the country illegally with
false Indian passports (Idema, Bennett, and Caraballo), running a
private and/or illegal jail, and torture.  After a trial on
September 15, 2004 that was allegedly fraught with violations of
Afghan and international law and only lasted for three hours,
petitioners were convicted of all of the charges pending against

3

them.  The Afghan nationals on trial were sentenced to one to five years in prison, Caraballo was sentenced to eight years, and Bennett and Idema were sentenced to ten years.  The Court of Appeals eventually upheld the conviction in late March 2005.  However, the Court of Appeals dismissed a charge against the three Americans for entering Afghanistan illegally and reduced their sentences.[2]

Petitioners allege that the FBI stole and/or destroyed valuable exculpatory evidence during the initial trial and the appeal.  They further allege that U.S. officials exerted undue influence over Afghan judges.  Petitioners also claim that the Afghan judges that presided over their appeal and the prosecutor indicated that they thought that the petitioners were innocent and would have released them but were ordered not to do so.

The day after their first trial ended in September 2004, petitioners were transferred from NDS custody to the Pulacharke prison, which is under the control of the Afghan Ministry of Justice.  Idema still remains in this prison, but Bennett and Caraballo are no longer in prison and have left Afghanistan.  *See* Oct. 3, 2006 Bennett Aff. (detailing how Bennett left Afghanistan

---

[2] The sentences were reduced to five years for Idema, three years for Bennett, and two years for Caraballo.  *See Afghan court cuts prisoners' sentence*, UPI, Apr. 1, 2005; Amir Shah, *Afghan court upholds convictions, cuts sentences for Americans jailed for freelance terrorist hunt*, Associated Press, Mar. 31, 2005 (collectively Ex. B to Respondents' Opp'n to Petitioners' Mot. for TRO and Other Relief and Rule 60 Mot.).

and how he is not in United States custody); Supp. Brief in Opp'n to Petitioners' Motion for TRO [Dkt. No. 20] (noting unopposed fact that Caraballo was released from Afghan custody and returned to the United States on April 30, 2006).[3]  Banderas also appears to no longer be in prison.  *See generally* Oct. 6, 2006 Banderas Aff. (noting various instances where Banderas engaged in conduct outside the prison and nowhere indicating that Banderas is still a prisoner).  If he does remain in prison, it appears to be his choice to do so.  *See* Habeas Pet. at 34, ¶ 57 ("Lieutenant Rasuli [Banderas] . . . refused to be released without Idema and the rest of the team, requesting the judges to allow him to stay in prison with . . . Jack Idema and the other two Americans until their trials were completed. . . . The judges granted his request."); Oct. 6, 2006 Banderas Aff. ¶ 4 ("The Appeals court held a new trial in December 2004.  I was found innocent of all charges . . . and released. . . . I decided to stay with Jack and my other team members.").[4]

---

[3] Caraballo appeared at a hearing before this Court on May 4, 2006.  *See Idema, et al. v. Rice, et al.*, No. 05-2064 (D.D.C. May 5, 2006) (Order).

[4] In his most recent affidavit, Banderas also indicates that "[w]hen Jack [Idema] and Brent [Bennett] were found innocent but not released, the Appeals Court also gave me a <u>new</u> sentence." Oct. 6, 2006 Banderas Aff. ¶ 4.  As discussed above, however, this affidavit also strongly suggests that he was no longer in prison as of October 2006 given his description of events in which he was involved.

## II.  DISCUSSION

### A.  Habeas Petitions of Banderas, Bennett and Caraballo

After a habeas petitioner's sentence expires or he is
otherwise released, "some concrete and continuing injury other
than the now-ended incarceration or parole -- some 'collateral
consequence' of the conviction -- must exist if the suit is to be
maintained." *Spencer v. Kemma*, 523 U.S. 1, 7 (1998); *see also
Qassim v. Bush*, 466 F.3d 1073, 1076-77 (D.C. Cir. 2006) (relying
on *Spencer* to find that survival of habeas claim after release
requires a collateral consequence); *Zalawadia v. Ashcroft*, 371
F.3d 292, 297 (5th Cir. 2004) ("[F]or a court to exercise habeas
jurisdiction over a petitioner no longer in custody, the
petitioner must demonstrate that he was in custody at the time he
filed the petition and that his subsequent release has not
rendered the petition moot, i.e., that he continues to present a
case or controversy under Article III, § 2 of the
Constitution.").  The petitioner bears the burden of establishing
collateral consequences.  *See, e.g., Kimberlin v. U.S. Parol
Comm'n*, No. 03-5017, 2004 WL 885215, at *1 (D.C. Cir. Apr. 22,
2004) (noting that petitioner "must demonstrate continuing
collateral consequences attributable to the challenged . . .
decisions to avoid dismissal of his petition"); *DeFoy v.
McCullough*, 393 F.3d 439, 442 n.3 (3d Cir. 2005) ("It is a

petitioner's burden to demonstrate that collateral consequences exist to avoid having a case dismissed as moot.").

Petitioners Banderas, Bennett and Caraballo, by their own admission, are no longer in custody at Pulacharke prison and there is no suggestion that any of them are in any form of American custody. Moreover, Caraballo and Bennett have left Afghanistan. These individuals have failed to demonstrate any collateral consequences that would warrant survival of their habeas claims. Petitioners Bennett and Banderas do not even allege any collateral consequences, making their habeas claims moot.

In a brief filed on September 11, 2006, Caraballo argued that he suffers two collateral consequences of his imprisonment in Afghanistan: (1) ruined employment prospects and (2) denial of core parental rights. *See* Pet'r Caraballo's Resp. to Supp. Brief in Opp'n to Petitioners' Mot. for TRO Addressing Mootness of Pet'r Caraballo's Claim [Dkt. No. 24]. Caraballo claims that his professional reputation as a journalist has been completely destroyed. *Id*. at 5. He accuses U.S. and Afghan officials of having provided false and prejudicial remarks to the press while he was imprisoned. *Id*. Caraballo also claims that he has been denied visitation with his daughter as a result of the events in Afghanistan and his alleged wrongful conviction. *Id*. at 7.

7

While these consequences are unfortunate, they do not present a legally cognizable reason for this Court to maintain jurisdiction over Caraballo's habeas claim. Equitable remedies that courts can provide in habeas cases typically involve "either an order to a custodian to ameliorate the conditions of a petitioner's detention . . . or an order freeing a petitioner from penalties resulting from conviction that persist beyond the end of detention." *Omar v. Harvey*, No. 06-5126, 2007 WL 420137, at *15 (D.C. Cir. Feb. 9, 2007). In *Lane v. Williams*, 455 U.S. 624, 631-33 (1982), the Supreme Court limited post-release habeas relief to "civil disabilities" imposed on former detainees by operation of law. *See also Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968) (finding that habeas petition was not moot after expiration of sentence because of certain statutory consequences of being a convict under New York law such as losing the right to vote, serve as an official in a labor union, serve as a juror or engage in certain businesses). By contrast, non-statutory consequences that flow from a conviction such as loss of employment prospects or affect on a sentence in a future criminal proceeding are not sufficient to keep a habeas petition from becoming moot upon release. *Lane*, 455 U.S. at 632-33.

In this case, Caraballo only alleges "collateral consequences" that are not imposed by state or federal law as a result of his conviction in Afghanistan. As in *Lane*, the

consequences alleged are based on the discretionary decisions of
employers or judges and are not legally prescribed consequences
of incarceration.  *See id.*  This Court has no power to overturn
the Afghan conviction, declare it void, or in any way affect the
discretionary decisions of prospective employers or family court
judges.  While the Court understands Caraballo's desire to
restore his good name, a habeas petition is not the proper method
to do so.

For the reasons discussed above, the habeas claims of
Caraballo, Bennett, and Banderas are dismissed as moot.

### B.   Idema's Habeas Petition

Idema is the only individual who still remains incarcerated
at Pulacharke Prison in Afghanistan.  The Court is deeply
troubled by the allegations raised in the habeas petition and
various subsequent filings regarding the level of U.S. control
over petitioners' arrest, conviction, appeal, and confinement.
While this Court is keenly aware of case law suggesting that it
does not have jurisdiction over a habeas petition stemming from a
foreign conviction and sentence, petitioners' claim does more
than simply challenge a foreign conviction.  Petitioners allege
that United States officials ordered their arrest, ordered their
torture, stole exculpatory evidence during their trial and
appeal, exerted undue influence over Afghan judges, and either
directly or indirectly ordered judges who found petitioners

9

innocent not to release petitioners from prison.  These facts are alleged in a habeas petition and later statements of fact and affidavits that have all been verified as true and correct by petitioners under penalty of perjury.

The Court cannot simply ignore petitioners' alleged facts and find that it lacks jurisdiction without any response to these troubling facts by respondents.  Indeed, the respondents have invited the Court to seek further information from respondents regarding the facts in this case.[5]  Accordingly, the respondents shall respond to petitioners' factual allegations and show cause why this Court should not grant a writ of habeas corpus to petitioner Idema by **April 10, 2007.**

### C.    Motions for Temporary Restraining Orders

#### 1.    First Motion for TRO

On March 1, 2006, petitioners filed a Motion for Temporary Restraining Order and Other Relief and Rule 60 Motion [Dkt. No. 7].  In their motion, petitioners alleged that Caraballo was

---

[5] In their Supplemental Brief Addressing Jurisdiction, respondents argue that the Court lacks jurisdiction and further state that:

In the event the Court determines that it cannot reach this conclusion based on the record before it, the Government's factual silence should not be a basis for a finding of jurisdiction.  Instead, respondents should be afforded an opportunity to respond to the petition before this Court takes any other actions.

Supplemental Br. Addressing Jurisdiction [Dkt. No. 40] at 10.

being "held hostage by Taliban and al-Qaida terrorists" and that
petitioners Banderas, Bennett, and Idema were "under siege in the
Block 2 Annex of the prison." Mot. for TRO and Other Relief and
Rule 60 Mot. at 1. Petitioners also alleged that the United
States Departments of Justice and State "maliciously and
wrongfully ordered Afghan forces not to make a rescue attempt."
*Id*. at 2. Petitioners sought an emergency temporary order
(1) preventing respondents and their agents from interfering in
the ongoing siege at Pulacharke Prison; (2) preventing
respondents and their agents from withholding, seizing, or
returning relief parcels and mail sent to and from the men under
siege at Pulacharke; (3) directing respondents to accept and
expeditiously send mail to petitioners for at least 15 days after
the siege ends; and (4) directing FBI agents to remove themselves
from Pulacharke Prison. *Id*. at 3. On March 9, 2006, respondents
filed their opposition stating that the prison uprising ended on
the day the petitioners filed their motion. *See* Respondents'
Opp'n to Petitioners' Mot. for TRO and Other Relief and Rule 60
Mot. at 5 (citing news articles stating that the prison siege was
over).

The portion of petitioners' motion seeking a temporary
restraining order is now moot. Petitioners have not refuted the
fact that the prison siege ended soon after it started.
Moreover, petitioner Caraballo returned to the United States at

11

the end of April 2006 and was present at a hearing before this
Court on May 4, 2006.  Even if the siege were still ongoing, the
petitioners have provided no authority and the Court is aware of
none that would allow it to grant any of the relief requested by
petitioners in their motion.

In addition to requesting a temporary restraining order,
petitioners raise numerous other arguments for various forms of
relief.  First, petitioners request an order transferring this
case back to the Southern District of New York.  This Court
agrees with Judge Hellerstein's May 18, 2005 Order transferring
venue of this case from the Southern District of New York to the
District Court for the District of Columbia.  *See Idema, et al.
v. Rice, et al.*, No. 05-2947 (S.D.N.Y. May 18, 2005) (order
denying motion to dismiss and transferring venue).  Petitioners
filed a very similar motion to the one at issue here on May 23,
2005 in the Southern District of New York.  *See* Petitioners'
Reply to Respondents' Mot. to Dismiss, and Petitioners' Mot. to
Amend, or in the Alternative Petitioners' Rule 60 Mot., *Idema*,
No. 05-2947 (S.D.N.Y. May 23, 2005).  Judge Hellerstein treated
the motion as one for reconsideration of his order transferring
the case and denied it.  *See Idema*, No. 05-2947 (S.D.N.Y. June 1,
2005) (order denying motion for reconsideration).  This Court
sees no reason to revisit this issue at this time.  Moreover,
this case has proceeded in this Court for over a year and

petitioners' frequent filings in this Court suggest that they
have abandoned any argument that this Court is not the proper
jurisdiction to consider their claims.

Petitioners further argue that they have a right to amend
their habeas petition but should not be required to do so.  This
Court directed Mr. John Edwards Tiffany, on behalf of Idema only,
to file an Amended Habeas Petition by February 9, 2006.  *See
Idema, et al. v. Rice, et al.*, No. 05-2064 (D.D.C. Jan. 19, 2006)
(Order).  Petitioner Idema objected to this Order stating that
petitioners should not be forced to separate their claims.  *See*
Letter from John E. Tiffany to Judge Emmet G. Sullivan (Feb. 9,
2006) [Dkt. No. 5].  Because the habeas claims are now moot as to
all petitioners except Idema, the Court will not require Idema to
file an amended petition at this time.

Petitioners further argue that respondents should be barred
from filing any further motions to dismiss.  To date, respondents
have never filed a motion to dismiss in this Court.  Any motions
respondents or petitioners wish to file will be governed by the
Federal Rules of Civil Procedure and applicable case law.

Finally, petitioners seek a second temporary restraining
order (1) barring the United States government from intercepting,
delaying, obstructing, or refusing mail between petitioners and
their attorneys family and friends; (2) ordering respondents to
cease and desist their privacy violations and violations of

13

attorney-client privilege; and (3) ordering respondents to provide drinking water, medicine and relief packages to petitioners.  Respondents counter that none of the relief requested by this portion of the motion in any way relates to petitioners' liberty and that habeas petitions are not the proper means to challenge conditions of confinement.  This Court agrees with respondents that a habeas petition is not the proper vehicle to challenge either conditions of confinement or the provision of consular services to Americans abroad.  *See Brown v. Plaut*, 131 F.3d 163, 167-68 (D.C. Cir. 1997).

For the reasons discussed above, Petitioners' Motion for Temporary Restraining Order and Other Relief and Rule 60 Motion is denied.

### 2.   Second Motion for TRO

On September 28, 2006, petitioners Idema and Bennett moved for an Emergency Temporary Restraining Order.  *See* Life & Death Emergency Mot. [Dkt. No. 26].  Petitioners allege that, at some point in mid-September 2006, the United States Consul ordered the Pulacharke Prison Commandant to use deadly physical force to take Bennett into custody and deliver him to U.S. custody.  At the time the motion was filed, petitioners claimed that Bennett had been forcibly separated from Idema during a dinner and placed in the al-Qaida section of the prison where he was expected to be beaten and tortured by Karzai's Intelligence agents.  Idema was

14

allegedly barricaded in and holding off forces "under the direct control and command of the United States Embassy in Afghanistan, specifically the US Consul." *Id*. at 2. Petitioners requested a temporary restraining order preventing respondents and their agents from interfering in the ongoing siege at Pulacharke Prison, ordering respondents and their agents to direct their forces to place Idema and Bennett together back in their initial area of confinement, ordering the U.S. Consul to withdraw the apprehend and kill order for both Idema and Bennett, and directing United States agents to remove themselves from Pulacharke Prison.

The Court ordered an immediate response from the government. On September 29, 2006, the government filed an opposition brief and declaration from the United States Consul in Afghanistan. The respondents argued that petitioners provided no support for their factual assertions and that those factual assertions were false. Given the widely varying accounts of what was occurring at the Pulacharke prison, the Court ordered the petitioners to file an immediate reply to the respondents' opposition brief. On October 2 and 3, Idema and Bennett filed affidavits with the Court indicating that the prison siege had ended by September 29 and that Bennett was no longer in Afghanistan nor was he in United States custody. *See* Oct. 2, 2006 Idema Aff. ¶¶ 14-15; Oct. 3, 2006 Bennett Aff. In other words, the motion for a

15

temporary restraining order was already moot when these affidavits were filed.  Accordingly, the motion is denied.

### D.    Remaining Motions

#### 1.    Notice of Objections and Motion to Compel

On March 3, 2006, petitioner Idema filed a Notice of Objections and Motion to Compel [Dkt. No. 12].  He asked the Court to take notice of the Clerk's failure to file and docket *pro se* motions to appoint counsel and obtain transcripts submitted by Bennett and Banderas.  However, the docket reflects that a motion for expedited copies of transcripts [Dkt. No. 10] and a motion to appoint counsel [Dkt. No. 11] were both filed and docketed on February 27, 2006.  There is no indication that the Clerk of the Court failed to docket any other filings received.  Therefore, this motion is denied as moot.

#### 2.    Motion for Reconsideration and Clarification of July 14 Minute Order

On July 14, 2006, the Court issued the following Minute Order:

> MINUTE ORDER granting [10] Motion for Expedited Copies of Transcripts.  The Court hereby notes the government's objections, and orders that the transcript of the January 19, 2006 hearing be mailed to the following address for petitioners Bennett and Banderas: Consular Section, United States Embassy, Great Massoud Road, Kabul, Afghanistan.  Further, the mail should be placed in two envelopes -- the outside envelope should contain the above address without the petitioners' names, and the inside envelope should contain the petitioners' names.  Further, petitioner Caraballo's copy should be mailed to the address noted on the

16

docket.  Signed by Judge Emmet G. Sullivan on July 14, 2006. (lcegs2) (Entered: 07/14/2006).

On July 28, 2006, the respondents filed a Motion for Reconsideration and Clarification of July 14 Minute Order [Dkt. No. 23].  Respondents ask the Court to reconsider its Order to the extent that the Order directs the transcript to be mailed to petitioner Banderas care of the United States Embassy. Respondents argue that American embassies often provide mail service to incarcerated Americans around the world but that such accommodation is both discretionary and limited to American citizens.  Respondents also seek clarification on whether they are being asked to mail a copy of the transcript to petitioner Bennett.  Because Banderas and Bennett are no longer incarcerated at Pulacharke Prison, this motion is denied as moot.

## III. CONCLUSION

For the foregoing reasons, the Court dismisses the habeas claims of Bennett, Caraballo, and Banderas as moot.  The Court orders respondents to address petitioners' factual allegations and show cause why a writ of habeas corpus should not be issued as to petitioner Idema.  Finally, the Court denies all other pending motions.  An appropriate order accompanies this Memorandum Opinion.


**Signed:    Emmet G. Sullivan**
**           United States District Judge**
**           March 21, 2007**

17