### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

J. K. Idema, Brent Bennett,

*Petitioners,*

*vs.*

Zalmay Khalilzad, Ambassador, *and*,
Robert S. Mueller, Director of the FBI,

*Respondents.*

**PETITIONER'S RESPONSE TO COURT'S ORDER TO FILE A SURREPLY AND VOLUNTARY DISMISSAL OF CERTAIN CAUSES OF ACTION**

**Case # 05 CV 2064 (EGS)**

**Assigned Judge:** Hon. Emmet G. Sullivan,
US District Judge

_____

**NOW COMES,** Petitioner, J. K. Idema, through counsel, and Petitioner Brent Bennett joining *pro se*,[1] and responds as set for below.

As an initial matter, Petitioners request this Honorable Court convert this case to a Bivens' action and allow Petitioners ten days to pay the filing fee. Additionally, Petitioners voluntarily dismiss causes of action which are rendered moot by Idema's travel from Afghanistan.[2]

Further, Petitioners, and counsel, would like to make it clear that we believe had this Court not issued its Order directing the government to respond, Jack Idema would never have gotten the passport he needed to leave Pulacharke Prison, nor left Afghanistan alive or unscathed. For that, we are all grateful. While Jack Idema did choose the time and manner in which he left Afghanistan, for reasons set forth more fully below, contrary to Respondents' claim that he "holds the keys to his incarceration," he did not. He did however hold the ability to make extreme sacrifices for that liberty. In the end, he sacrificed liberty and property interests, and quite possible his future freedom, to get

_____

[1] Bennett joinder is based on Respondents' refusing to allow him re-entry to Afghanistan to recover his property and his denial of property rights and illegal seizure of exculpatory evidence by Respondents.
[2] Just as US DOJ internal guidelines to DOJ counsel direct, Respondents have succeeded in successfully avoiding answering any allegation for more than two years.

himself and a dog out of US State Department custody,[3] as explained hereafter.  While this renders certain issues moot, as addressed herein, by no means does it defeat all of the claims, and makes several claims even more important.

The question remaining for this Court is whether or not Jack Idema is still suffering liberty deprivations at the hands of Respondents which were pled in the Petition and subsequent filings. The answer to that threshold question is still YES.  While Respondents have repeatedly mischaracterized the Petition as a simple question of custody, the Petition raised seven separate questions, some multi-part.  Quoting from the Petition, with an explanatory statement after each original question originally raised, makes it clear that the Petition may not be dismissed in its entirety.  The questions originally raised were as follows:

I.      Whether a Petition filed pursuant to 28 United States Code § 2241 is the proper procedural vehicle for the relief Petitioners request.

**Position:** Yes, it was and remains for some issues, the proper vehicle.

II.     Whether the Southern District of New York is the proper jurisdiction due to the Petitioners' current incarceration in the Islamic State of Afghanistan.

**Position:** Moot, this Court assumed jurisdiction and Petitioners do not oppose or question that jurisdiction.

III.    Whether Respondents are engaging in the illegal rendering of Petitioners to violate their constitutional rights and for the explicit purpose of denying Petitioners *due process* protections and subjecting them to continued false imprisonment by Respondents' proxies.

**Position:** Moot.  While Petitioners hereby request that this portion of the case be converted to a Bivens type civil action, and Respondents, who would now be Defendants, be given 30 days to file an answer, Petitioners do not object, and consent to dismissal of this cause of action.  Of note, while it is inescapable that neither Idema

---

[3] In the interest of time, Mr. Idema has verified all facts herein and is attempting to get an affidavit to counsel with supporting audiotapes and evidence.

or Bennett are currently suffering rendition, it should be considered that neither have, nor can, return to their homes in America for reasons set forth more fully below.

IV.   Whether, as a result of Respondents' actions, Petitioners have been, and are being, denied vital liberty interests; such as the right to be free from illegal search and seizure.  And, whether Respondents have intentionally, maliciously, and knowingly violated Petitioners' constitutional rights by: withholding exculpatory evidence, illegal confiscation and/or destruction of exculpatory evidence, engaging in denial of *due process*, obstruction of justice, and abuse of process.

**Position:** Still fully before this Court.  Little has changed on this question of liberty deprivation in spite of the release of all Petitioners.  Sill, Petitioners suffer these liberty deprivations.[4]  Not only did Respondents order the Afghan NDS to retain Idema's exculpatory original passport, but they also ordered and forced the Afghan NDS to retain all of Idema's property, evidence, documents, and materials, from computers to socks, in an effort to insure the exculpatory evidence held would never see the light of day.  As a point of fact, supported in previous affidavits, and never disputed, the US government holds sole dominion and control over Idema and Bennett's property and the exculpatory evidence therein.

---

[4] Quoting from the original Petition, Section II, the scope and context of which Respondents ignore and seem to take the position that it was not pled, is the following related to issues continuing after release from physical confinement:

"Most importantly, "[w]hile the language of [§ 2241] would indicate that writ of habeas corpus is appropriate only when petitioner is 'in custody,' this section **does not** attempt to mark the **boundaries of 'custody'** nor in any way other than by use of that word attempt to limit the situation in which the writ can be used." *See; Hammond v. Lenfest,* C.A.2 (Conn.) 1968, 398 F.2d, 705.  It is important to note, that "habeas corpus tests not only the fact, but the form of detention and the lawfulness of restrictions placed upon personal freedom." *See; Bland v. Rodgers*, D.C.D.C. 1971, 332 F.Supp. 989.

The district court in North Carolina ruled that "[t]o invoke federal writ of habeas corpus [a person] need not [even] be physically detained in jail or prison; it is only necessary to show that there are impediments significantly restraining his liberty to do those things free men are entitled to do." *See; Walker v. State of N.C.,* D.C.D.C. 1966, 262 F.Supp. 102, affirmed 372 F.2d 129." [Emphasis Added]

V.    Whether Respondents are engaging in the denial of fundamental liberty interests by denying, restricting, searching, and seizing personal correspondence, and attorney/client privileged correspondence, with the intention of denying liberty rights and *due process* to Petitioners.

**Position:** Moot.  While Petitioners hereby request that this portion of the case be converted to a Bivens type civil action, and Respondents, who would now be Defendants, be given 30 days to file an answer, Petitioners do not object, and in fact consent, to dismissal of this cause of action.  Of note, while it is inescapable that neither Idema or Bennett are now physically restricted from sending or receiving mail, there is no evidence before this Court that contradicts a continuing deprivation in the search or seizure of mail.  Point in fact, Counsel was sent five CD's with video evidence to file with this Court, that package is curiously missing after four weeks. The tape-recorded and/or intercepted conversations, and undercover videotapes which those CDs contained are not however lost, and are, like Judge Ahmadzai's affidavit, completely devastating to the United States government's position over the last three years.  Fortunately, the digital video files were uploaded by friends to the internet and are available for the Court's viewing at www.superpatriots.us/05CV2064

VI.    Whether Respondents' decisions, actions, and intentionally false statements to a foreign court were arbitrary and did not comport with the Petitioners' *due process* and constitutional rights.

**Position:** Moot.  While Petitioners hereby request that this portion of the case be converted to a Bivens type civil action, and Respondents, who would now be Defendants, be given 30 days to file an answer, Petitioners do not object, and in fact consent, to dismissal of this cause of action.

VII.    Whether Respondents' acts in obstructing mail, confiscating and copying mail, refusing to send mail, and refusing to respond to letters and requests by Petitioners is in fact an intended, arbitrary and capricious obstruction for the sole purpose of denying Petitioners *due process* and other protections of the U.S. Constitution, including subjecting Petitioners to cruel and unusual punishment.

**Position:** Moot.  While Petitioners hereby request that this portion of the case be converted to a Bivens type civil action, and Respondents, who would now be Defendants, be given 30 days to file an answer, Petitioners do not object, and in fact consent, to dismissal of this cause of action, with the same caveat expressed in number V above relative to information and belief that there is a continuing interception of mail and attorney/client communications.

### THE ADDITIONAL ALLEGATIONS STILL BEFORE THIS COURT

In the original Petition, skillfully unanswered by Respondents for more than two years, and repeatedly mischaracterized, Petitioners laid out additional grounds for this case as far more than just custody and physical restraint of their persons.  Quoting:

> "**This** Petition **also includes** allegations of torture, physical abuse, physical threats, psychological and emotional abuse, and intended starvation, denial of *due process*, <u>illegal search and seizure</u>, and denial of the right to counsel as more fully outlined below, and which violated the United States Constitutions, the *Geneva Convention on Human Rights*, the *U.N. Declaration of Human Rights*, and the other agreements mentioned herein, to which the Respondents are bound." (Original Petition, ¶ 7, emphasis added)

The fact that this case involves more than simply the physical location of Idema and Bennett is inescapable regardless of how many times Respondents say, the man is free, the case is over.  If only it were that easy.  It is not.  Respondents should and must be required to respond to those issues still before this Honorable Court; a) the illegal seizure and withholding of Petitioners' property and exculpatory evidence, b) the continued threat of a new type of custody to be imposed, c) continued psychological and emotional abuse, and d) continued denial of liberty interests.  Despite the fact that Respondents have morphed their ongoing liberty deprivations either slightly or vastly, the fact remains those specific liberty deprivations are still occurring.

a)        Respondents still exercise complete control over Petitioners' property and evidence held at NDS under Respondents' orders. The affidavits filed, including from Afghan Supreme Court members and Afghan officials, are

overwhelming evidence of this.  They are not refuted by any Afghan official or citizen.  Why? Perhaps no Afghan official dares lie to this Court.

b)    While Petitioners no longer suffer the extreme rendition by Respondents in what is arguably the world's most infamous prison, the fact remains that Respondents are working hard everyday to put them back in custody. Why? Obviously they view them as a threat to their personal interests— their information and evidence might bring about the indictment of US officials.  How? Respondents are in full swing on new retaliatory measures. Just this last week, FBI agents[5] have flown from Washington DC to New York to interview persons Idema had contact with, they have approached, questioned, and harassed friends of Idema in North Carolina, both directly and through third parties.  Some of these questions have been patently ridiculous, *i.e.:* Special Agent Barnett questioned one subject as to whether or not Jack Idema was going to write a book[6] or make a movie about what happened.[7]  Respondents have refused to answer letters related to the Grand Jury proceedings in North Carolina, upon information and belief, refused to allow exculpatory evidence submitted by Idema and defense witnesses to

---

[5] Including William Barnett of the FBI's counterterrorism unit out of the Washington Field Office.

[6] In our previous filing we stated "It is our position, and my firm belief, that Respondents needed to stop Idema from four things: 1) ever being released and in a position to tell his story or testify to Congress and the Senate about what happened; 2) ever being able to appear in this Court and testify under oath as to what happened, 3) covertly removing evidence from Afghanistan which implicates numerous US officials in serious felony crimes, not the least of which include, but are not limited to; suborning perjury, perjury, torture, authorization of the torture of American citizens, withholding evidence, bribery, witness tampering, obstruction of justice, and pre-existing knowledge of the planned assassinations of "former" US allies—including Yunis Qanooni, elected Chief of the Parliament, General Mohammed Fahim, then Minister of Defense, now Parliament member, and others such as Ambassador Wali Massoud, brother to assassinated leader Commander Ahmad Shah Massoud, and 4) prevent Idema from testifying at the Grand Jury (Case #2005R00044) secretly convened by Respondents for purely retaliatory purposes." Now, once again, Respondents' actions justify our statements, they are obviously concerned about Idema telling the story of what really happened.

[7] Just the vague threat of retaliation for writing a book, if Idema ever did, could easily give rise to a new petition for deprivation of First Amendment liberty interests.

reach the Grand Jury, refused to allow Idema to testify before the Grand Jury, and upon information and belief, knowingly submitted false and fabricated information to the Grand Jury. It is not coincidental that this Grand Jury was empanelled by Respondents just a short time after this Petition and the related FOIA case were filed against Respondents.[8] Petitioners believe that this ongoing Grand Jury investigation, now approximately two years old, is a continuing effort to keep Petitioners wrongfully incarcerated.[9]

c)    Respondents are still engaging in extreme psychological and emotional abuse by linger threats of prosecution, empanelling Grand Juries for the purposes of fishing expeditions, and telling Idema through third parties that he should never return to the United States. Thereby denying him the liberty to see his ailing 87 year old father.

d)    Other continuing acts include some unsuccessful, one of which was Respondents plan to search and seize Idema property when he went through Afghan immigration and customs during his departure from Kabul. The only things that prevented this was good fortune, good planning, quick thinking, and Afghan military assistance, allowing Idema to secretly depart from a non-commercial location on a non-commercial flight, to a non-disclosed location. Still, Idema was forced by Respondents, in spite of Birsner's claims of "assistance," to leave behind his property in order to save Bennett's dog. There simply came a point where if he ever wanted to

---

[8] Upon information and belief, Respondents impaneled a Grand Jury just months after this *habeas corpus* case was filed. In spite of repeated letters demanding Jack Idema be allowed to testify, not one has ever been answered, nor has the government admitted the existence of the Grand Jury investigation into Idema or sent out a Target Letter.

[9] Although the Grand Jury is being run by AUSA James Candelmo of the EDNC US Attorneys Office, in Raleigh, NC, the case comes out of the Washington DC FBI Field Office, and is being conducted by FBI Special Agent William Barnett believed to be working at the FBI's Counter-terrorism Task Force (202-278-4325), an FBI task force that previously worked with Idema on Counter-Terrorist issues.

rescue the dog from Afghanistan, he had to choose between the dog and the evidence. He chose the dog. The exculpatory evidence and extensive property, more than $250,000 worth of property and equipment, had to be left behind in spite of the Amrullah Saleh[10] order,[11] a copy of which was filed in this court in the two previous filings, which directed Idema's original exculpatory passport, exculpatory evidence and property, be immediately returned to him. Respondents successfully blocked this.[12]

### RESPONDENTS' INTERPRETATION OF THE PETITION AS COMPARED TO THE ACTUAL PETITION FILED

Respondents go through great lengths to mischaracterize the Petition and the actual relief requested, much of which is still within the purview and jurisdiction of this Court in spite of Idema's release from physical custody at Pulahcarke. Quoting Respondents Motion:

Respondents' motion, page 9, ¶3:

"Accordingly, his habeas claim – **which was predicated on respondents' alleged interference with the criminal process that**

---

[10] As quoted in the original Petition, ¶24; "Amrullah Saleh (hereafter "Amrullah") is the chief of NDS, headquartered in Kabul. He was appointed by Hamid Karzai to replace the former Northern Alliance Chief of NDS, Engineer Araf. Amrullah is responsible for all NDS employees and the operation of the NDS prison and interrogation facilities. Amrullah was formerly an interpreter for the U.S. government, and is believed to have been appointed at the direct request of the FBI, and is believed to be a U.S. citizen."

[11] On March 25, 2007, Amrullah Saleh, Director of the National Security Directorate (NDS *aka* NSD), under considerable pressure from senior Afghan government officials and diplomats, signed an order returning Jack Idema's property and "especially his passport." That Order is attached as **Exhibit A-1** to the Affidavit of Supreme Court member, Judge Rahim Ahmadzai, previously filed in this Court.

[12] On March 26, 2007 the "Saleh Order" was sent down to the 19th Division of NDS by General Mustamandi for forwarding to the 17th Division evidence room. There, an agent of the United States Embassy, Investigator Modafi, immediately contacted the US Consul and told him that Idema's property and passport had been ordered returned. The Embassy moved swiftly, establishing that the Afghan Ministry of Justice was refusing to illegally hold Idema any longer, and that the Northern Alliance plan was to return his property and covertly take him out of the country without the US Embassy knowing. Using all of the force and influence they illegally wield in Afghanistan, the Department of State, US Embassy Kabul, and others both known and unknown, were able to block the return of Idema's property and the passport.

**resulted in his conviction – is now moot**. … Indeed, none of the allegations of the Petition relate to the circumstances of Mr. Idema's current detention and the relief sought in the Petition relating to the fact (**as opposed to the conditions**) of petitioner's confinement **all relate to the criminal trial and respondents' alleged interference therewith.**" [Emphasis Added].

Respondents' motion, page 12, ¶3:

"[B]ecause that continued detention is no longer predicated on the challenged action (the allegedly improper conviction resulting from respondents' alleged interference with the criminal trial), **but rather on an entirely new and independent legal basis not addressed in the Petition** (the Afghan government's decision to deport Mr. Idema). <u>See also</u> *Hernandez v. Brooks*, No. 98-1358, 1999 WL 298094, at *1 (10th Cir. 1999) [Emphasis Added]

Respondents' motion, page 9, ¶3:

"First, that custody is not based upon the allegedly tainted conviction, but rather upon a separate **Afghan government determination to deport Mr. Idema**… Second, Mr. Idema's continued detention is, at this point, solely a function **of his refusal to take the necessary steps** to make travel arrangements to leave Afghanistan." [Emphasis Added]

Respondents' motion, page 10, ¶1:

"The parties must continue to have a stake in the outcome of the lawsuit. This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury *traceable to the defendant and likely to be redressed by a favorable judicial decision*. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (emphasis added) (internal citations and quotation marks omitted). <u>See also</u> *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).

Respondents' motion, page 10, ¶2:

Thus, "*[o]nce the convict's sentence has expired*, . . . some concrete and continuing injury – other than the now-ended incarceration or parole . . . must exist if the suit is to be maintained." *Spencer*, 523 U.S. at 7 (emphasis added). <u>See also</u> March 21 Slip Op. at 6."

But compare Respondents' characterization of the case, and the relief sought with the actual Prayer for Relief set forth by Petitioners in their pleading filed more than two years ago:

**"Prayer For Relief**

1) barring the United States government <u>from intercepting,</u> delaying, obstructing, or refusing mail between the petitioners and their attorneys, family, and friends;

2) ordering the Department of Justice and Federal Bureau of Investigation <u>to return directly to Petitioners all property and exculpatory evidence confiscated and seized illegally from Petitioners and without jurisdiction;</u>

3) ordering Respondents to cease all communication, intended to obstruct justice, with the government of Afghanistan related to the Petitioners' criminal case in Afghanistan;

4) ordering Respondents, and/or their agents, <u>from conducting continued illegal searches and seizures;</u>

5) ordering Respondents <u>to acknowledge protected status</u> and abide by the Geneva Conventions and other protections to which Petitioners are entitled to;

6) removing all restrictions on liberty which Respondents have imposed upon Petitioners through their agents, through the use of rendition, and;

7) ordering Respondents to cease and desist their privacy violations and release of personal, private, and privileged information to the public and to the press.

8) **Petitioners Pray for additional Relief as set forth below;**

   a.    Granting Petitioners immediate POW status with all rights and privileges accorded, for those Petitioners still in custody by Respondents.

   b.    Imposing sanctions against Respondents for repeated, intentional, and grave violations of the Geneva Conventions, international and U.S. laws and treaties.

   c.    An award of attorney fees.

   d.    Other such relief as just and proper."

(Original Petition, emphasis added)

Contrary to Respondents' position that only custody was challenged, and that has now been rendered moot, the Petition challenged liberty deprivations which are ongoing and are suffered by Idema and Bennett. Therefore, this Court should and must address these issues and order Respondents to answer those remaining allegations related to the continuing constitutional rights violations.

Lastly, to clarify the record, and out of courtesy to the Court, Petitioners would like to address the actual departure of Jack Idema from Afghanistan. In their motion, Respondents set forth their view of the situation, a false and misleading statement, unsupported by any Afghan official document or statement:

> "**[H]is continued detention pending deportation** should not provide the basis for continued habeas jurisdiction. As set forth above, the Afghan authorities have indicated that while they intend to deport Mr. Idema, they expect him to make his own travel arrangements. Birsner Decl., ¶ 3. Respondents' motion, page 14, ¶2 [Emphasis Added]

Respondents never even attempted to prove to this Court that anyone wanted to deport Jack Idema <u>except</u> the US Embassy. There was NO deportation order, which is why they cannot show it to this Court, there is no restriction on Jack Idema, including just driving out of Pulacharke in his own Land Cruiser to any one of a dozen Northern Alliance controlled locations, to the military airfield, to Kabul Airport, or to the border, by the Afghan government. The evidence shows that Respondents were the sole purveyor of all liberty deprivations challenged in the petition and subsequent filings.

Respondents wanted Idema leaving with just the clothes on his back and handcuffed to the plane. That image would tell the world what the Department of State needed the world to see; that the Afghans were responsible for all that occurred. We told this Court that if Idema,

> "were not truly in the custody of Respondents, the world might see a different picture as Idema left, dozens of Afghan diplomats and generals wishing him well and a safe return—a stark contrast to Bennett, who was posed like a trophy for pictures next to State Department security agents."

Just as we told this Court, Jack Idema left hand in hand with the commanding generals, surrounded by former American Northern Alliance allies, told goodbye and good luck by two vice-presidents, three Afghan ambassadors, and the escorted by the United Front Military Force generals he had fought with (*see* Exhibit A – www.caosblog.com/5280 .  Their bodyguards stayed with him right up to the plane, including one that had previously been shot three times and stabbed in the neck protecting him from terrorists years before, this time protecting him from Respondents.

Unfortunately, Jack Idema's key to freedom was forfeiting exculpatory evidence and evidence of criminal acts by US officials, and surrendering his property to the Department of State.[13]  Fortunately he was able to liberate Bennett's dog, and avoid continued torture and possibly death, at the hands of the US government run NDS torture facility, Saderat.

### CONCLUSION

This Honorable Court has the ability and the jurisdiction to set the final slate right in this matter, by continuing jurisdiction until Idema has returned to the United States and appeared before this Court, and by ordering Respondents to address the continuing liberty deprivations addressed in the original Petition and outlined above.

**WHEREFORE,** Petitioners request this Honorable Court enter and order, 1) directing Respondents to place in writing, a release of Idema's passport and property at NDS 17th Division and return to him in accordance with the signed Order of Amrullah Saleh, 2) restricting Respondents, or their agents, from the illegal seizure of property without a valid warrant or court order, 3) directing the US Embassy to remove their objection to future Afghan or other visas being issued to either Bennett or Idema, and 7)

---

[13] As quoted from Petitioners' previous filing: "No doubt the Embassy knows that if Nina the dog does not fly in the next ten days or so, she won't be able to depart until the summer heat flight restrictions on dogs lifts four months from now.  Leaving Idema right where the US Embassy wants him—in prison."

directing respondents to answer the remaining allegations and factual claims of the petition in accordance with the facts set forth herein.

This 16th Day of June 2007.[14]

_____s/_____
John Edwards Tiffany,
Attorney (JT7322)
*For Petitioner Idema*
Law Offices of John E. Tiffany P.C.
The Robert Treat Center
50 Park Place, 10th Floor,
Newark, New Jersey 07102
Tel:  (973) 242-3700
Fax: (973) 242-3799
www.JohnTiffanyLaw.com
Email: Jet@Jet4Law.com

---

[14] Petitioner Idema has read all statements made in this pleading, and has verified and sworn to those facts in the attached verification.

# VERIFICATION OF PETITIONER

**Verification of Jack Idema: ss.**

1. I am a Petitioner in the §2241 Case of Idema, *et al.,* v. Khalilzad, *et al., DCDC,*
2. I declare under the penalties of perjury as follows, but expressly not limited thereto:
3. I have either read the Surreply, or had it read to me. I have fully reviewed the Response and found it to be accurate and factual.
4. The facts stated in the attached pleading are true and accurate, and any contrary facts asserted by the government, are patently false.
5. The facts stated in Petitioners' Surreply, are personally known to me and, if called as a witness, I could testify competently thereto, except to those facts stated under information and belief, which I believe to be true.
6. Further Declarant sayeth not.

Executed under the penalties of perjury, in accordance with 17 U.S.C. §1746 on this

16th Day of June 2007.

J. K. Idema, Declarant/Petitioner

**14**

# 6/12/2007

## Breaking: *Exclusive* Jack Idema is no longer at Pulacharke; he left Afghanistan

Filed under: General , Task Force Sabre 7 @ 4:35 am



Mohammed Fahim Khairy visited my blog and here's what he said about Jack:

> Jack is free? what a wonderful news, the man is back huh? Jack Idema your part of our history. I cant wait to contact you directly please visit my blog and let me hear ur own words

The only thing is, very few people know this. So I didn't respond. Then, his impatience grew, and he sent me an email.

Well I certainly don't want to be rude, this is a young man who understands the situation in Afghanistan and has been printing the truth about what's been going on there at his wonderful blog. He tells his own story in a fresh, honest way. Fahim is someone who is a testament to what Jack has been saying; that Jack's version of what's going on in Afghanistan is the truth. And Fahim is someone who would know, not someone standing next to a brokendown birdbath in Wisconsin.

I have known about Jack's releases and Karzai's attempting to grant him 'amnesty' as though he's a terrorist, for a long time. I knew, for example, that he's been gone from Afghanistan for quite a while now, and I've been searching the news articles coming out of Afghanistan, looking for the press's acknowledgement of that incredible fact. Either there has been an intentional blackout on this, or this is just more evidence that the media is totally clueless about the real story.

Fahim has contacts back in Afghanistan who have told him this news, apparently, hot off the Kabul pipeline, outside of the AP and the spinmeisters who are so desperate to tell the story in the worst possible way. The goal of that, it seems to me, is to indict him in the press for WAR CRIMES so the DOJ can use it against him in the Habeas proceedings rather than bring witnesses forward with affadavits to their wild, inaccurate and false claims. What a wonderful way to release the news, because the Afghans know and realize he is a true hero to them and to their country.

You can see that clearly here in this video of Judge Abed, the Chief Justice of the Afghan NDS Appeals Court when he says "I love Jack's courage. If someone asks me, I will tell them. Jack is not guilty." Abed joins other Afghans in claiming Jack Idema and his men were completely innocent of the charges. The guilty verdict of the kangaroo court in

EXHIBIT A

Afghanistan, was announced by dishonest inaccurate press reports and blogs in September of 2004 and after. But, after being sentenced to 10 years in that horrible place, the notorious Pulacharke where thousands of people died at the hands of the soviets during the soviet occupation, Jack was released after 2 1/2 years back in January. He was actually declared innocent before that, but the American government kept him there, using Karzai's Anti-Massoud Afghans as proxies.

That in itself should tell you something, even if you haven't seen all the videos and audio intercepts of the Afghans declaring him innocent, or the clips from the Indian film about this, entitled SHAKUR SHAITAN. That movie is where the above 40-second clip above was taken from.

I called Jack, and he reluctantly agreed that it is time to break the news. He has been enjoying some much needed R&R, and who can blame him after the press and bloggers have been relentlessy attacking and maligning his character?

**Jack Idema is no longer at Pulacharke and has left Afghanistan.**









Taking Nina to the plane.







hmmmm. Is there anything strange about this picture to you? Notice how how he's not leaving in shackles and he's

surrounded by Northern Alliance Generals? Some of what happened is not pictured here; like the hundreds of people who saw him off, and the phone calls he received from significant people in the government.

Have you ever seen a dog board a plane like this without being in a crate or a kennel? Looks like the Embassy lost this round. Do you notice the soldiers carrying his bags and briefcase? Notice that he and Nina are flying out of a military airfield on a huge plane where he and the dog - six legs - are the only two passengers?



Jack's gear and Nina on the plane, posing for a photo op to remember this delicious moment. With a nod to Commander Massoud and the Massoud family, he wears the pakol; the signature hat of the Northern Alliance.



Aww, his detractors must be so upset about this picture; being escorted - not as a criminal - but by a dozen Northern Alliance Generals and both Vice Presidents called at the airfield to say goodbye, two Ambassadors sent their advisors to say goodbye, also. Not pictured, more than 200 officers came to say good-bye, and representatives from the Massoud Foundation.



And during the flight, Nina cuddled up to him.

Thank you all for your support, and for caring for the Americans at Pulacharke over the last three years. It is time to close the chapter on Pulacharke and the drama over their stay there. But another chapter in the story has begun, and he still needs justice from his own government for leaving him hanging him out to dry.



Jack said he will go over and get in touch with Fahim, and perhaps Fahim will interview him from an American northern Afghan's perspective and post it on his blog. I look forward to that.



Cross posted at the National Writers Syndicate and the Wide Awakes

**For permission to use these pictures, contact Kelly Price, Senior Editor, Polaris images: phone +347 204 8999**

Listen to this podcast

Right Voices linked with **\*Breaking\* Jack Idema has left Afghanistan Blogburst**

# 12 Comments **»**

1. Finally some good news… I can only imagine how happy you must be right now.

   *Comment by Carolyn Hileman — 6/12/2007 @ 7:05 am*

2. outstanding. Repeat, OUTSTANDING!

   *Comment by GM Roper — 6/12/2007 @ 7:32 am*

3. Thank You God!!!

   *Comment by Jo — 6/12/2007 @ 8:52 am*

4. That's great news and I'm sure everyone involved is happy! 

   Do you think Jack will visit you to offer thanks for your tireless efforts on your Blog?

   If so, make sure he doesn't park his vehicle on an Illinois street, as **THIS COULD HAPPEN**

*Comment by SSgt Yatahey* — *6/12/2007 @ 12:09 pm*

5. My last message "From Pulacharke" — Thanks to Caos Blog, all the other blogs, and to Rotty and Fahim, and everyone for everything you did over these years. And thanks to the UFMF - ("Northern Alliance"), America's forgotten allies, but still my dear friends.

   There is a lot I could say, but for now, lets just leave it at thanks, thanks a lot. I owe you all a beer, and eternal gratitude for helping put out the real events and countering the lying press like AP and the NY Times.

   Jack Idema, from a new land of sand

   *Comment by Jack Idema From Pulacharke* — *6/12/2007 @ 12:25 pm*

6. You're welcome, Jack. Godspeed.

   Thanks, yat, you're a kick. And thanks everyone…including the lookers who are not posting comments.

   

   *Comment by Cao* — *6/12/2007 @ 5:42 pm*

7. […] As seen at Cao's Blog: […]

   *Pingback by Right Voices » Blog Archive » *Breaking* Jack Idema has left Afghanistan Blogburst* — *6/12/2007 @ 7:00 pm*

8. Hey Jack — Welcome Home Bro!

   Cao; Rotty and many others have been keeping up with you … sharing a few beers with you would be a pleasure, should we somehow meet up someday. 🙂

   But, for now, go out there and kick the Media in their tight DEMOCRAPPERS A$$ — they damn well deserve it! 😄

   **OOHHRRAAHH — Semper Fi!!!**

   *Comment by SSgt Yatahey* — *6/13/2007 @ 4:16 pm*

9. Were the four Afghans from Jack's team eventually released as well?

   *Comment by John Doe* — *6/13/2007 @ 4:59 pm*

10. Never mind I found out they were freed in 2005. AP didn't mention this when Idema was released.

http://caosblog.com/2454

*Comment by John Doe — 6/13/2007 @ 5:04 pm*

---

11. Yes, the Afghans were freed. Idema and his men were declared innocent, during the same proceedings [the trial de novo], but not freed; although the Afghans wanted to free them. The AP is determined to tell the story wrong.

*Comment by Cao — 6/13/2007 @ 5:05 pm*

---

12. I think Rotty; GM Roper; myself and numerous others need to get together with you and Cao at the same time over beers — sounds like a great time to me! 🍺

*Comment by SSgt Yatahey — 6/13/2007 @ 6:09 pm*

---



RSS feed for comments on this post. TrackBack URI

# Leave a comment

Name (required)

Mail (will not be published) (required)

Website

Subscribe to comments (Email field must be filled in)
Use the Subscription Manager to manage your current subscriptions.

June 2007

M T W T F S S

CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing Petitioners' Response has been duly served upon the below named Respondents by depositing it in the mail in the U.S. Post Office, *via* First Class mail, on the 17th day of June, 2007, addressed as follows;

> MARCIA BERMAN
> Trial Attorney
> (PA Bar No. 66168)
> United States Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Avenue N.W. Room 7204
> Washington, D.C. 20530
> Tel.: (202) 514-3330
> Fax: (202) 616-8470
> Email: marcia.berman@usdoj.gov

This 17th day of June 2007.

_____s/_____
John Edwards Tiffany